2022-2000

In The
# United States Court of Appeals for the Federal Circuit

TAIZHOU UNITED IMP. & EXP. CO. LTD.,

Plaintiff

GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., BEIJING JIANGHEYUAN HOLDING CO., LTD., JANGHO GROUP CO., LTD., JANGHO CURTAIN WALL HONG KONG LTD.,

Plaintiffs-Appellants,

v.

UNITED STATES, ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE,

Defendants-Appellees.

Appeal from the United States Court of International Trade in
1:16-cv-00009-LMG, Judge Leo M. Gordon

**OPENING BRIEF OF PLAINTIFFS-APPELANTS
GUANGZHOU JANGHO CURTAIN WALL SYSTEM
ENGINEERING CO., LTD., ET AL.**

**J. Kevin Horgan**
**Gregory S. Menegaz**
**Alexandra H. Salzman**
**DeKieffer & Horgan, PLLC**
**1090 Vermont Avenue, NW, Suite 410**
**Washington, DC 20005**
**(202) 783-6900**
*Counsel for Plaintiffs-Appellants*                    **October 3, 2022**

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2022-2000 |
| **Short Case Caption** | Taizhou United Imp. & Exp. Co. Ltd. v. US |
| **Filing Party/Entity** | Plantiff-Appellants: Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Shanghai Jangho Curtain Wall System Engineering Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Jangho Group Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/03/2022

Signature: /s/ J. Kevin Horgan

Name: J. Kevin Horgan

**FORM 9. Certificate of Interest**

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Guangzhou Jangho Curtain Wall System Engineering Co., Ltd. | | |
| Shanghai Jangho Curtain Wall System Engineering Co., Ltd. | | |
| Beijing Jangho Curtain Wall System Engineering Co., Ltd. | | |
| Beijing Jiangheyuan Holding Co., Ltd. | | |
| Jangho Group Co., Ltd. | | |
| Jangho Curtain Wall Hong Kong Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| Kristen S. Smith from Sandler, Travis & Rosenberg, PA | Sarah Elizabeth Yuskaitis from Sandler, Travis & Rosenberg, PA | |
| Arthur K. Purcell from Sandler, Travis & Rosenberg, PA | Michelle Lynn Mejia from Sandler, Travis & Rosenberg, PA | |
| Mark Rett Ludwikowski from Sandler, Travis & Rosenberg, PA | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| Guangzhou Jangho Curtain Wall System Engineering Co., Ltd. et al v. United States; CASE #: 1:17-cv-00017-LMG | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable            ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ......................................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES............................................................2

STATEMENT OF THE CASE...............................................................3

SUMMARY OF THE ARGUMENT ......................................................7

ARGUMENT .......................................................................................9

I.      Standard of Review...................................................................9

II.     Commerce Acted Contrary to Law by Imposing Countervailing Duties on Aluminum Extrusions Incorporated in Curtain Wall Units Based on Jangho's Purchases of Glass for Less Than Adequate Remuneration..........................11

III.    The CIT Erred By Sustaining Commerce's Remand Determination On the Basis of an Impermissible *Post Hoc* Rationalization ....................................17

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................25

# TABLE OF AUTHORITIES

**Cases:**

Agostini v. Felton,
  521 U.S. 203 (1997) .............................................................................21

Alpharma, Inc. v. Leavitt,
  460 F. 3d 1 (CADC 2006) ..................................................................22

American Textile Mfrs. Institute, Inc. v. Donovan,
  452 U. S. 490 (1981) ...........................................................................23

Atlantic Sugar, Ltd. v. United States,
  744 F.2d 1556 (Fed. Cir. 1984) .............................................................9

Camp v. Pitts,
  411 U. S. 138 (1973) ........................................................................9, 22

Carcieri v. Salazar,
  555 U.S. 379 (2009) ............................................................................15

Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.,
  467 U.S. 837 (1984) ................................................................. 11, 15-16

Christopher v. SmithKline Beecham Corp.,
  567 U. S. 142 (2012) ...........................................................................23

Citizens to Pres. Overton Park, Inc. v. Volpe,
  401 U. S 402 (1971) .............................................................................23

Consolidated Edison Corp. v. Labor Board,
  305 U.S. 197 (1938) ...............................................................................9

Corus Staal BV v. United States,
  279 F. Supp. 2d 1363 (CIT 2003) .......................................................21

Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,
  140 S. Ct. 1891 (2020) ...............................................................8-9, 22-24

Diversified Products Corp. v. United States,
  6 572 F. Supp. 883 (CIT 1983) ...........................................................10

FAG Italia S.P.A. v. United States,
   291 F.3d 806, 816 (Fed. Cir. 2002) ........................................................15

Ford Motor Co. v. United States,
   992 F. Supp. 2d 1346, 1355 (CIT 2014) ................................................21

Former Emples. of Quality Fabricating, Inc. v. United States,
   353 F. Supp. 2d 1284 (CIT 2004) ..........................................................21

Gerald Metals, Inc. v. United States,
   132 F.3d 716, 720 (Fed. Cir. 1997) .......................................................10

Hyundai Steel Co. v. United States,
   19 F.4th 1346, 1354 (Fed. Cir. 2021) ............................................. 15-16

Messenger v. Anderson,
   225 U.S. 436 (1912) ...............................................................................21

Michigan v. EPA,
   576 U. S. 743 (2015) ..............................................................................22

Pension Benefit Guaranty Corporation v. LTV Corp.,
   496 U. S. 633 (1990) ..............................................................................22

SEC v. Chenery Corp.,
   332 U. S. 194 (1947) .........................................................................22, 23

Shandong TTCA Biochemistry Co., Ltd. v. United States,
   774 F. Supp. 2d 1317 (CIT 2011) .................................................... 10-11

Taizhou United Imp. & Exp. Co. v. United States,
   475 F. Supp. 3d 1305 (CIT 2020) .....................................................5, 20

Taizhou United Imp. & Exp. Co. v. United States,
   560 F. Supp. 3d 1316 (CIT 2022) ...............................................6, 8, 18

Torrington Co. v. United States,
   127 F.3d 1077 (Fed. Cir. 1997).............................................................10

United States v. White,
   846 F.2d 678 (11th Cir. 1988) ...............................................................21

Universal Camera Corp. v. NLRB,
  340 U.S. 474 (1951) .............................................................................9, 10

USX Corp. v. United States,
  655 F. Supp. 487 (CIT 1987) ...................................................................10

**Statutes:**

19 U.S.C. §1516a(b)(l)(B) ...........................................................................9

19 U.S.C. §1671 .............................................................................7-8, 12-13

19 U.S.C. §1671(a)(1) ........................................................................... 16-17

19 U.S.C. §1671(e) ......................................................................................7

19 U.S.C. §1677-1......................................................................................13, 17

**Regulations:**

19 C.F.R. §351.511 ...............................................................................1, 20

**Administrative Determinations:**

Aluminum Extrusions from the People's Republic of China: Final Results, and
Partial Rescission of Countervailing Duty Administrative Review 2013,
  80 Fed. Reg. 77,325 (Dec. 14, 2015) .......................................................3

:

## STATEMENT OF RELATED CASES

In response to Federal Circuit Rule 47.5(a), Plaintiffs-Appellants are not aware of any other appeal in or from the same civil action or proceeding in the lower court that was previously before this Court or any other appellate court other than the actions consolidated herein.  Pursuant to Federal Circuit Rule 47.5(b), Plaintiffs-Appellants advise the Court that *Guangzhou Jangho Curtain Wall System Engineering Co., Ltd. and Jangho Curtain Wall Hong Kong Ltd.  V. United States*, Ct. No. 17-00017, an action pending in the United States Court of International Trade, has been stayed pending the outcome of this appeal because it presents some issues identical to those that are the subject of this appeal.

## JURISDICTIONAL STATEMENT

This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(5), as an appeal from the U.S. Court of International Trade.  The Court of International Trade had jurisdiction under 28 U.S.C. § 1581(c), which gives the Court of International Trade jurisdiction over any action commenced with respect to final Commerce Department determinations under 19 U.S.C. § 1516a.

This appeal is timely.  Plaintiffs-Appellants filed their notice of appeal on July 11, 2022, within 60 days of the lower court's final judgment issued on May 10, 2022.

## STATEMENT OF THE ISSUES

This case presents the questions: 1) whether the Commerce Department's determination to assess countervailing duties pursuant to a countervailing duty order ("CVD") on aluminum extrusions from China based on a respondent company's purchases of glass for less than adequate remuneration ("LTAR") is lawful and supported by the administrative record when: a) the glass is not within the scope of the CVD order, b) the glass is not used as an input in the production of in-scope aluminum extrusions, and c) the respondent company is a purchaser of in-scope aluminum extrusions, not a producer of in-scope aluminum extrusions; and 2) whether the CIT erred by sustaining the Commerce Department's determination based on a post-hoc rationale proffered for the first time after the CIT found Commerce's original determination to be unlawful.

## STATEMENT OF THE CASE

This appeal arises from the final judgment of the United States Court of International Trade ("CIT") affirming the U.S. Commerce Department's ("Commerce") Final Results of administrative review of the countervailing duty ("CVD") order on aluminum extrusions from the People's Republic of China, covering the period January 1, 2013 through December 31, 2013. <u>Aluminum Extrusions from the People's Republic of China: Final Results, and Partial Rescission of Countervailing Duty Administrative Review</u>, 2013, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) ("Final Results"); Appx000535. Plaintiff-Appellants Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd.; Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System Engineering Co., Ltd. (collectively "Jangho") are affiliated manufacturers and installers of curtain wall systems consisting of curtain wall units installed on the exterior surface of high-rise buildings. <u>Post-Preliminary Analysis Memorandum in the 2013 Countervailing Duty Administrative Review; Aluminum Extrusions from the People's Republic of China</u> at 31-32 (Oct. 27, 2015) (hereinafter ("PPA"); Appx000390-000391. None of the Jangho companies is a producer of aluminum extrusions or glass. Rather, Jangho is a purchaser of aluminum extrusions and

3

glass panels that are used as components in the assembly of curtain wall units.  Id. at 31-32 & 37; Appx000390-000391 & Appx000396.

In the CIT, Jangho argued, among other things, that the Commerce Department's determinations to countervail subsidies arising from Jangho's purchases of aluminum extrusions and glass for less than adequate remuneration ("LTAR") as "inputs" to the subject merchandise were not supported by substantial evidence and contrary to law because glass and aluminum extrusions are not inputs for the production of aluminum extrusions.  Jangho Rule 56.2 Brief at 27-37; Appx000575-000585.  In the case of glass, Jangho also argued that LTAR purchases of glass are not countervailable under a countervailing duty ("CVD") order covering aluminum extrusions because such subsidies are tied to non-subject merchandise, i.e., glass.  Id.  In the underlying administrative review, Commerce relied on information provided by the petitioner in support of its LTAR glass finding. See PPA at 38, Appx000397.  As Jangho pointed out in its comments on Commerce's remand determination, the information provided by petitioner shows that the alleged LTAR glass subsidy under review was actually a pass through of upstream government subsidies.  Jangho Comments on Remand Results at 8; Appx000620.  As explained by Petitioners:

> By providing extensive subsidies to its state-owned and state-controlled glass producers, the Government of China (the "GOC") is able to also promote the industry producing aluminum extrusions, as glass producers sell the raw material at a significant discount to, and thereby benefit, the

producers of aluminum extrusions - including items such as curtain wall units."

Petitioner's New Subsidies Allegations at 2 & Exhibit 1 (Jan. 9, 2015);

Appx000090 & Appx000115-000152.

In its initial decision below, the CIT noted that Commerce did not dispute

that it generally does not countervail subsidies tied to non-subject merchandise.

Taizhou United Imp. & Exp. Co. v. United States, 475 F. Supp. 3d 1305, 1310 (Ct.

Int'l Tr. 2020) ("Taizhou I").  The CIT held in Taizhou I that:

> As subassemblies, curtain wall units are subject to the exclusion of their non-aluminum extrusion components from the order: "The scope does not include the non-aluminum extrusion components of subassemblies." CVD Order, 76 Fed. Reg. at 30,654. Commerce's conclusion that "a curtain wall unit is subject merchandise, inclusive of aluminum extrusions, glass, and all other components" unreasonably contravenes the plain language of the order. See Decision Memorandum at 100. The scope of the order covers aluminum extrusions, not glass, and the CVD Order expressly excludes the non-aluminum extrusion components of subassemblies like curtain wall units. It is therefore arbitrary to conclude the glass is subject merchandise. By the scope's definition, it is not. This is not arguable or subject to interpretation. The scope is clear. Commerce must abide by the clear scope language. The court will therefore remand this issue for Commerce to correct its analysis of the non-aluminum extrusion components of the curtain wall units. Those are not subject merchandise.

475 F. Supp. 3d at 1310-11.  No party to the action below has disputed the CIT's

holding that glass used in curtain walls does not fall within the scope of the CVD

order on aluminum extrusions from China, *i.e.*, that glass is non-subject

merchandise.  *See* Remand Results at 6; Appx000593.

In its remand determination, Commerce abandoned its previously expressed

rationale for countervailing LTAR glass purchases, *i.e.*, that glass was an input for

aluminum extrusions. Remand Results at 7; Appx000594.  Instead, Commerce

explained: "Our determination of the type and amount of countervailable subsidies

provided to a respondent company considers all financial contributions by a

government authority that are specific and confer a benefit on the recipient

company, in accordance with sections 771(5) and (5A) of the Act.  Consistent with

the statute and Commerce's regulations, our benefit analysis examines whether *the*

*respondent company* has been provided a subsidy that confers a benefit to the

company, and not whether the benefit can be shown to flow directly to its

production of subject merchandise." Remand Results at 7-8(emphasis in original);

Appx000593-000594.

In its decision affirming the remand results, the CIT "sustain[ed] as

reasonable both Commerce's finding that the glass subsidies at issue were not

"tied" to non-subject merchandise, as well as Commerce's determination to

continue to account for glass subsidies in the net subsidy rate." Taizhou United

Imp. & Exp. Co. v. United States, 560 F. Supp. 3d 1316, 1325 (CIT 2022)

("Taizhou II").

## SUMMARY OF THE ARGUMENT

Commerce's determination to countervail Jangho's purchase of glass for less than adequate remuneration ("LTAR") when the LTAR price is attributed to upstream subsidies is not in accordance with law because it fails to comport with the plain meaning of the statutory text.  Section 731(e) of the Tariff Act of 1930, *as amended*, 19 U.S.C. §1671(e), requires that an upstream subsidy must be tied to the manufacture or production of the subject merchandise as an input or it cannot be countervailed.  However, the CIT and Commerce have now found that glass subsidies are not tied to the subject merchandise as inputs for aluminum extrusions.  Therefore, glass purchases by Jangho cannot be countervailed according to the plain meaning of the statute's text because glass is not an input for aluminum extrusions.

In its remand determination Commerce offered a new rationale for countervailing glass as an upstream subsidy by suggesting that its "benefit analysis examines whether the *respondent company has been provided a subsidy that confers a benefit to the company*, *and not whether the benefit can be shown to flow directly to its production of subject merchandise.*"  Remand Results at 7-8 (emphasis added); Appx000593-000594.  However, Congress's expressed intent is that an upstream subsidy should only be countervailed if it "bestows a competitive benefit *on the merchandise*" and "has a significant effect on the *cost of*

7

*manufacturing or producing the merchandise*".  19 U.S.C. §1671.  Here, Jangho is

not a producer or manufacturer of aluminum extrusions.  Therefore, the glass

purchased by Jangho does not bestow a competitive benefit on the manufacture or

production of aluminum extrusions because Jangho does not manufacture or

produce aluminum extrusions.

Second, the CIT allowed Commerce to offer an impermissible *post hoc*

rationalization as a basis for Commerce's determination to countervail glass

subsidies in its remand results.  In its remand results, the Department offered a

novel rationale, avering that it based its determination to countervail glass

subsidies on a finding that the subsidy *was not* tied to subject merchandise when

the Department originally found that the alleged subsidy *was* tied to subject

merchandise by virtue of being an input to the subject merchandise.  In *Taizhou II*,

the CIT acknowledged that the Department of Commerce offered a *post hoc*

rationale for its determination but claimed that this *post hoc* rationalization was

permissible because it was Commerce, not the Department of Justice, asserting the

rationale for the first time.  However, it does not matter who offered the *post hoc*

rationalization.  *Post hoc* rationalizations are not allowed to be offered by the

Department of Commerce or the Department of Justice.  Dep't of Homeland Sec. v.

Regents of the Univ. of Cal., 140 S. Ct. 1891, 1907-09 (2020).  Moreover, when a

case has been remanded "the basic rule here is clear: An agency must defend its

8

actions based on the reasons it gave when it acted;" and while "the agency may elaborate later on that reason (or reasons) {the agency} may not provide new ones." Id. (*citing* Camp v. Pitts, 411 U. S. 138, 143, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973)).

## ARGUMENT

## I.    Standard of Review

When reviewing the Court of International Trade's judgment concerning a final determination of Commerce, this Court reapplies the Court of International Trade's standard of review.  In reviewing countervailing duty determinations, this court's review consists of a *de novo* review of the agency's actions rather than merely reviewing the adequacy of the lower court's decision.

This Court invalidates determinations, findings or conclusions of Commerce that are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *See* 19 U.S.C. § 1516a(b)(l)(B).  "[S]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (*quoting* Consolidated Edison Corp. v. Labor Board, 305 U.S. 197, 229 (1938)).  Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." Atlantic Sugar, Ltd. v. United States, 744

F.2d 1556, 1562 (Fed. Cir. 1984).  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [its] view.'" Diversified Products Corp. v. United States, 6 CIT 155, 161, 572 F. Supp. 883, 888 (1983) (*quoting* Universal Camera, 340 U.S. at 488).

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." USX Corp. v. United States, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997) (*quoting* Universal Camera, 340 U.S. at 487).  In reviewing the agency's decision, "the Court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." Torrington Co. v. United States, 19 C.I.T. 403, 409 (1995), aff'd, 127 F.3d 1077 (Fed. Cir. 1997).  The "reviewing court may not, 'even as to matters not requiring expertise ... displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de

novo.'" Shandong TTCA Biochemistry Co., Ltd. v. United States, 774 F. Supp. 2d 1317, 1321 (Ct. Int'l Trade 2011).

Courts review Commerce's interpretation and application of the countervailing duty statute under the two-step framework set forth in Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837 (1984). At *Chevron* step one, the reviewing court determines "whether Congress has directly spoken to the precise question at issue." Id. at 842. "If the intent of Congress is clear," the courts give effect to that intent. Id. at 842–43. If "the statute is silent or ambiguous with respect to the specific issue," the reviewing court proceeds to step two of the Chevron framework, where it determines "whether the agency's answer is based on a permissible construction of the statute." Id. at 843. At Chevron step two, the court asks whether Commerce reasonably filled the gap Congress left open as to the appropriate methodology. In answering that question, the Court therefore defers to the agency's interpretation of the statute so long as it is not "arbitrary, capricious, or manifestly contrary to statute." Id. at 467 U.S. 843–44.

## II. Commerce Acted Contrary to Law by Imposing Countervailing Duties on Aluminum Extrusions Incorporated in Curtain Wall Units Based on Jangho's Purchases of Glass for Less Than Adequate Remuneration

As noted above, the administrative record shows that the alleged LTAR glass subsidy was actually a pass through of subsidies provided to China's glass manufacturers. *See* Petitioner's New Subsidies Allegations at 2; Appx000090. In

its initial determination, Commerce countervailed the alleged glass subsidy based on its finding that glass was an input for merchandise within the scope of the CVD order, which Commerce asserted was curtain wall panels. Such a determination to countervail an upstream subsidy may have been lawful if, in fact, glass was an input for subject merchandise, *i.e.*, aluminum extrusions. But the CIT held, and on remand the Commerce Department conceded that glass is not an input used in the production of aluminum extrusions. In its remand determination Commerce offered a for the first time a new rationale for countervailing such an upstream subsidy by suggesting that its "benefit analysis examines whether the *respondent company has been provided a subsidy that confers a benefit to the company*, *and not whether the benefit can be shown to flow directly to its production of subject merchandise.*" Remand Results at 7-8 (emphasis added); Appx000593-000594.

The first prong of the *Chevron* standard of review states that where Congress has directly spoken to the precise question at issue, the reviewing court should give effect to the expressed intent of Congress. Congress has spoken directly to the question of when Commerce can countervail upstream subsidies.

Section 731of the Tariff Act of 1930, as amended, 19 U.S.C. §1671, provides in pertinent part:

(e)Upstream subsidies

Whenever the administering authority has reasonable grounds to believe or

suspect that an upstream subsidy, as defined in section 1677–1(a)(1) of this title, is being paid or bestowed, the administering authority shall investigate whether an upstream subsidy has in fact been paid or bestowed, and if so, shall include the amount of the upstream subsidy as provided in section 1677–1(a)(3) of this title.

Section 1677-1, title 19 U.S. Code, in turn, provides:

(a)"Upstream subsidy" defined

The term "upstream subsidy" means any countervailable subsidy, other than an export subsidy, that—

(1) is paid or bestowed by an authority (as defined in section 1677(5) of this title) with respect to a product (hereafter in this section referred to as an "input product") that is used in the same country as the authority in the manufacture or production of merchandise which is the subject of a countervailing duty proceeding;

(2) in the judgment of the administering authority bestows a competitive benefit on the merchandise; and

(3) has a significant effect on the cost of manufacturing or producing the merchandise.

In light of Congress's expressed intent that an upstream subsidy should only be countervailed if it "bestows a competitive benefit *on the merchandise*" and "has a significant effect on the *cost of manufacturing or producing the merchandise*," it was error for Commerce to base its remand determination on "whether the *respondent company has been provided a subsidy that confers a benefit to the company.*" An upstream subsidy must be tied to the subject merchandise as an input or it cannot be countervailed. The CIT and Commerce both agree now that

13

glass subsidies are not tied to the subject merchandise as inputs for aluminum extrusions. Therefore, the law does not authorize Commerce to countervail them.

In this case, Jangho's acquisition of glass at LTAR as a result of upstream subsidies did not impact cost of manufacturing or producing the subject merchandise, *i.e.,* aluminum extrusions, because Jangho did not manufacture or produce aluminum extrusions. Jangho purchased the aluminum extrusions it used in the production of curtain walls units. Thus, the benefit of the alleged glass subsidy even if it was received by Jangho does not bestow a competitive benefit on the manufacture or production of aluminum extrusions. Commerce's remand determination conflicts directly with the expressed intent of Congress respecting upstream subsidies and should, therefore, be rejected by this Court without further analysis. Commerce's focus on countervailing any benefit received by the respondent company is plainly at odds with the plainly expressed intent of Congress to countervail only those upstream subsidies that benefit manufacture or production of the subject merchandise.

Commerce cannot overcome the flaw in its reasoning by attempting to characterize its action as something other than countervailing an upstream subsidy. The facts in the record show that, at the behest of petitioners, Commerce was attempting to offset the alleged price-reducing effect of subsidies granted to Chinese glass producers whose products were incorporated in curtain wall units

14

alongside aluminum extrusions.  Petitioner's themselves stated:

> By providing extensive subsidies to its state-owned and state-controlled glass producers, the Government of China (the "GOC") is able to also promote the industry producing aluminum extrusions, as glass producers sell the raw material at a significant discount to, and thereby benefit, the producers of aluminum extrusions - including items such as curtain wall units."

Petitioner's New Subsidies Allegations at 2 & Exhibit 1 (Jan. 9, 2015);

Appx000090 & Appx000115-000152.

Even if this Court were to agree that Commerce was doing something other than countervailing an upstream subsidy it would be of no avail because there is no provision authorizing Commerce to countervail subsidies granted with respect to merchandise that is at most tangential to the subject merchandise.  As this Court pointed out in *Hyundai Steel Co. v. United States*, 19 F.4th 1346, 1354 (Fed. Cir. 2021), Congress's failure to expressly forbid an adjustment does not authorize Commerce to make such adjustments.  *See also* FAG Italia S.P.A. v. United States, 291 F.3d 806, 816 (Fed. Cir. 2002).

Addressing whether Commerce was authorized to make a particular market situation for purposes of the sales-below-cost test in an antidumping investigation, the Court in *Hyundai* stated:

> For a statute to be considered silent under Chevron step one, there must be a "gap left, implicitly or explicitly, by Congress" that Commerce is entitled to fill. Chevron, 467 U.S. at 843; see also Carcieri v. Salazar, 555 U.S. 379, 391, 129 S. Ct. 1058, 172 L. Ed. 2d 791 (2009) (refusing to give Chevron deference to an agency interpretation of a statute where Congress "left no

15

gap in [the statute] for the agency to fill"). In enacting the TPEA, Congress did not leave a gap for Commerce to fill with regard to adjusting the costs of production. Rather, Congress simply and unambiguously allowed for a PMS adjustment to constructed value but not to the costs of production for purposes of the sales-below-cost test. Because Congress left no statutory gap for Commerce to fill, Commerce may not apply a PMS adjustment to the calculation of costs of production under the sales-below-cost test, but "must give effect to the unambiguously expressed intent of Congress" not to allow such an adjustment. *See* Chevron, 467 U.S. at 843.

19 F.4th at 1354.  Likewise in this case, the fact that Congress has authorized

Commerce to countervail upstream subsidies granted with respect to non-subject

merchandise under some conditions does not authorize Commerce to countervail

subsidies granted to non-subject merchandise under other conditions.  Commerce

and the Court "must give effect to the unambiguously expressed intent of

Congress" not to allow such unspecified adjustments. *See* Chevron, 467 U.S. at

843.

Even if the Court were to find some ambiguity in the statute, Commerce's

analysis is clearly unreasonable because it is at odds with the fundamental

principle of the countervailing duty law which provides countervailing duties may

be imposed if "the administering authority determines that the government of a

country or any public entity within the territory of a country is providing, directly

or indirectly, a countervailable subsidy *with respect to the manufacture,*

*production, or export of a class or kind of merchandise imported, or sold (or likely*

*to be sold) for importation, into the United States,* … ." 19 U.S.C. §1671(a) (1)

(emphasis added).  As in the case of 19 U.S.C. §1677-1 quoted above, the

fundamental principle of the countervailing duty law set forth in 19 U.S.C. 1671(a)

authorizes the assessment of countervailing duties on subject merchandise, not on

respondent companies.

In this case, the administrative record shows that Jangho is not a

manufacturer or producer of aluminum extrusions.  <u>PPA</u> at 31-32; Appx000390-

000391.  The record does not support, and it was unreasonable for Commerce to

determine that the provision of glass to Jangho at LTAR benefited the manufacture

or production of aluminum extrusions because Jangho does not manufacture or

produce aluminum extrusions.  Jangho buys aluminum extrusions at a price which

is not tied directly or indirectly to the price Jangho pays for glass.  The record does

not support a conclusion that the alleged glass subsidies had an impact on the price

that Jangho paid for aluminum extrusions.  Thus, even if Jangho benefited from the

alleged glass subsidies, neither the record nor the law supports a finding that the

manufacture or production of aluminum extrusions benefited from glass subsidies.

## III.    The Cit Erred By Sustaining Commerce's Remand Results On The Basis Of An Impermissible *Post Hoc* Rationalization

This Court should overturn the CIT's decision to allow the Department of

Commerce to substitute a *post hoc* rationalization of its determination in the

Remand Results for the rationale used to support its original determination.  In the

CIT's second opinion issued on February 18, 2022, the CIT acknowledged that the

Department of Commerce offered a *post hoc* rationale for its determination to

countervail glass subsidies, but claimed that this *post hoc* rationalization was

allowed because it was Commerce that was asserting the new rationale and not the

Department of Justice asserting the rationale for the first time in the litigation:

> Commerce, not its U.S. Department of Justice counsel, clarified and further
> explained on remand the rationale underlying its original (and continued)
> determination without resorting to novel arguments or legal interpretations.
> Therefore, the court does not agree that the Remand Results reflect an
> impermissible *post hoc* rationalization of Commerce's initial determinations.

Taizhou United Imp. & Exp. Co. v. United States, 560 F. Supp. 3d 1316, 1325

(CIT 2022) ("Taizhou II").  However, a *post hoc* rationale issued by an agency is

*not* permissible.  Commerce did in fact resort to novel arguments to support its

Remand Results determination and therefore did employ an impermissible *post hoc*

rationalization of its initial determination.

In its original determination, the Department explained the basis for its

decision to countervail LTAR glass purchases as follows:

> As explained in *PET Film from India*, the Department does not normally
> countervail benefits found to be tied to non-subject merchandise. Here, as
> discussed above, curtain wall units such as those produced by the Jangho
> Companies are considered subject merchandise. In other words, subject
> curtain wall units containing glass is a single commercial product. Glass is
> therefore an input used in the manufacture of subject merchandise, i.e.,
> curtain wall units. Thus, benefits arising from the provision of glass for
> LTAR are not tied to non-subject merchandise. The Jangho Companies'

comparisons to PET Film from India, Large Residential Washers from Korea, Drill Pipe from the PRC, and Steel Wheels from the PRC are therefore not on point because in those cases the subsidy programs in question were found to be tied to the production of wholly separate non-subject merchandise.

We also disagree with the Jangho Companies and the GOC that the scope language at issue – "{t}he scope does not include the non-aluminum extrusion components of subassemblies or subject kits provides" – indicates that benefits from the provision of glass cannot be countervailed. Regardless of the Jangho Companies' and the GOC's arguments with respect to that language of the scope, this does not affect our ability to countervail glass for LTAR. As discussed, curtain wall units are subject merchandise and the inputs at issue are used in the production of subject merchandise. Thus, there is no basis to make a finding that the subsidy benefits for glass are tied to non-subject merchandise. In light of the foregoing, we find it is thus appropriate for the Department to continue to countervail the glass for LTAR program.

Decision Memorandum for the Final Results of Countervailing Duty

Administrative Review: Aluminum Extrusions from the People's Republic of

China, 2013 (Third Review), at 97-98 (Dec. 7, 2015) ("IDM"); Appx000502-

000503.  The foregoing demonstrates that for the purpose of its original

determination the Department acknowledged that the glass subsidies were tied to

non-subject merchandise but nevertheless countervailed the subsidies because,

according to the Department's erroneous interpretation of the scope of the order,

the subsidy was tied to an input for subject merchandise.

In the remand determination, the Department attempts to recast these record

facts by claiming that it based its determination on a finding that the subsidy *was not* tied to subject merchandise and that the respondent parties had failed to submit evidence that the subsidy was tied to non-subject merchandise.  Remand Results at 21; Appx000608.

In its Remand Results, the Department suggests the Court was wrong to believe the Department had accepted the fact that the LTAR purchases were tied to non-subject merchandise.  Remand Results at 7; Appx000594.  The Court did not err.  The Department did not base its determination on a finding that the benefits were not tied to non-subject merchandise, *i.e.*, glass.  The Department based its determination on a finding that glass was an input for subject merchandise. *See* IDM 97-98 quoted above; Appx000502-000503.

Section 351.511 of the Department's regulations, which the Department cites in its Remand Results as the basis for its determination, was not cited at all in explanation of its original finding.  In fact, the Department based its LTAR glass determination on an erroneous interpretation of the scope of the CVD Order, which the Court properly rejected in *Taizhou I*.  In *Taizhou I*, the CIT found that the plain language of scope description, read as a whole, included aluminum extrusions embedded in a curtain wall assembly but also clearly excluded curtain wall subassembly components such as glass panels that are not aluminum extrusions or inputs for aluminum extrusions.  The plain language of the CVD order does not

20

support a finding that glass panels are inputs for aluminum extrusions, an erroneous determination that the Department in fact relied on as the basis for the LTAR glass determination under review in this case.

Under the "law of the case" doctrine, a court should not reopen issues decided in earlier stages of the same litigation. Agostini v. Felton, 521 U.S. 203, 117 S. Ct. 1997 (1997), *citing* Messenger v. Anderson, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912). *See also* Former Emples. of Quality Fabricating, Inc. v. United States, 28 Ct. Int'l Trade 1061, 1070, 353 F. Supp. 2d 1284, 1292 (2004). The doctrine applies to judicial review of administrative decisions, and requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart. Corus Staal BV v. United States, 27 Ct. Int'l Trade 1180, 1184 n. 7, 279 F. Supp. 2d 1363, 1368 n. 7 (2003), *citing* Agostini v. Felton, 521 U.S. 203, 236, 138 L. Ed. 2d 391, 117 S. Ct. 1997 (1997); Messenger v. Anderson, 225 U.S. 436, 444, 56 L. Ed. 1152, 32 S. Ct. 739 (1912). The law of the case doctrine applies not only to matters explicitly decided by the court; it also encompasses matters decided by necessary implication by the Court. United States v. White, 846 F.2d 678, 684 (11th Cir. 1988). *See also* Ford Motor Co. v. United States, 992 F. Supp. 2d 1346, 1355 (Ct. Int'l Trade 2014).

Furthermore, the Department is not allowed to offer a new rationale in

support of its flawed decision to countervail a subsidy that is tied to non-subject

merchandise.  In *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, the

Supreme Court explained in detail that while an Agency may offer a fuller

explanation of its reasoning at the time of Agency action, the Agency is limited in

its explanation during a remand proceeding and may not provide new reasons for

its original determination:

> It is a "foundational principle of administrative law" that judicial review of agency action is limited to "the grounds that the agency invoked when it took the action." Michigan, 576 U. S., at 758, 135 S. Ct. 2699, 192 L. Ed. 2d 674.  If those grounds are inadequate, a court may remand for the agency to do one of two things:  First, the agency can offer "a fuller explanation of the agency's reasoning *at the time of the agency action*." Pension Benefit Guaranty Corporation v. LTV Corp., 496 U. S. 633, 654, 110 S. Ct. 2668, 110 L. Ed. 2d 579 (1990) (emphasis added). See also Alpharma, Inc. v. Leavitt, 460 F. 3d 1, 5-6, 373 U.S. App. D.C. 65 (CADC 2006) (Garland, J.) (permitting an agency to provide an "amplified articulation" of a prior "conclusory" observation (internal quotation marks omitted)). **This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones.** Camp v. Pitts, 411 U. S. 138, 143, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973) (*per curiam*). Alternatively, the agency can "deal with the problem afresh" by taking *new* agency action. SEC v. Chenery Corp., 332 U. S. 194, 201, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947) (*Chenery II*). An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.

Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1907-09

(2020).  The Supreme Court furthers advises that an Agency's "explanation 'must

be viewed critically' to ensure that {it} is not upheld on the basis of impermissible '*post hoc* rationalization.'" <u>Id</u>. at 1909 (*citing* <u>Overton Park</u>, 401 U. S., at 420, 91 S. Ct. 814, 28 L. Ed. 2d 136.).  The Supreme Court explains that:

> Considering only contemporaneous explanations for agency action also instills confidence that the reasons given are not simply "convenient litigating position[s]." <u>Christopher v. SmithKline Beecham Corp.</u>, 567 U. S. 142, 155, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) (internal quotation marks omitted). Permitting agencies to invoke belated justifications, on the other hand, can upset "the orderly functioning of the process of review," <u>SEC v. Chenery Corp.</u>, 318 U. S. 80, 94, 63 S. Ct. 454, 87 L. Ed. 626 (1943).

<u>Id</u>.

In addition, and contrary to the CIT's holding that Commerce's *post hoc* rationalization is allowed because it was offered by Commerce and not the Department of Justice, *Dep't of Homeland Sec.* specifically states that *post hoc* rationalizations offered either by those appearing on behalf of the agency or the agency itself are impermissible regardless of the speaker:

> While it is true that the Court has often rejected justifications belatedly advanced by advocates, we refer to this as a prohibition on post hoc rationalizations, not advocate rationalizations, because the problem is the timing, not the speaker**. The functional reasons for requiring contemporaneous explanations apply with equal force regardless whether *post hoc* justifications are raised in court by those appearing on behalf of the agency or by agency officials themselves**. See <u>American Textile Mfrs. Institute, Inc. v. Donovan</u>, 452 U. S. 490, 539, 101 S. Ct. 2478, 69 L. Ed. 2d 185 (1981) ("[T]he *post hoc* rationalizations of the agency . . . cannot serve as a sufficient predicate for agency action."); <u>Overton Park</u>, 401 U. S., at 419, 91 S. Ct. 814, 28 L. Ed. 2d 136 (rejecting "litigation affidavits"

from agency officials as "merely '*post hoc*' rationalizations")… **the basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted.**

<u>Id</u>.

Here, there is no compelling reason to allow the Department to offer a new rationale in support of its flawed decision to countervail a subsidy that is tied to non-subject merchandise.  The Department cited no new law, regulation or judicial precedent that would warrant a change in its analysis.  The Department did not merely elaborate on its prior decision.  The Department offered a brand new rationale, stating that it based its determination on a finding that the subsidy *was not* tied to subject merchandise when the Department originally found that the subsidy *was* tied to subject merchandise as an input.  Commerce's new explanation is, in fact, an impermissible *post hoc* rationalization offered by the Department and must be reviewed critically by this Court to ensure that this decision is not based on an impermissible *post hoc* rationalization.  Moreover, it is irrelevant whether the *post hoc* rationalization was offered by Commerce or the Department of Justice.  As stated above, new arguments offered by either the agency or its advocate are impermissible.  Therefore, Commerce's impermissible *post hoc* rationalization Cannot be used as a basis for sustaining its determination to countervail glass subsidies.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

In light of the foregoing, Plaintiffs-Appellants request that this Court enter judgment in their favor and order Commerce to recalculate the countervailing duty rate applicable to Jangho by excluding any amounts attributable to alleged purchases of glass at LTAR.

Respectfully submitted,

/s/ J. Kevin Horgan

J. Kevin Horgan
Gregory S. Menegaz
Alexandra H. Salzman *
**DEKIEFFER & HORGAN, PLLC**
1090 Vermont Avenue, NW
Suite 410
Washington, DC 20005
(202) 783-6900

October 3, 2022

* Admitted to California Bar; practice supervised by attorneys of the firm who are active D.C. Bar members pursuant to D.C. Bar Rule 49(c)(8).

25

ADDENDUM

Slip Op. 20-138

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., | |
| Plaintiff, | |
| and | |
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO GROUP CO., LTD., BEIJING JIANGHEYUAN HOLDING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO CURTAIN WALL HONG KONG LTD., SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., | Before: Leo M. Gordon, Judge |
| Consolidated Plaintiffs, | Consol. Court No. 16-00009 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | |
| Defendant-Intervenor. | |

**OPINION and ORDER**

[Final Results sustained in part and remanded in part.]

Dated: September 25, 2020

Douglas J. Heffner and Richard P. Ferrin, Drinker Biddle & Reath LLP of Washington, DC, for Plaintiff Taizhou United Imp. & Exp. Co. Ltd.

Consol. Court No. 16-00009                                              Page 2

    <u>James Kevin Horgan</u>, <u>Alexandra H. Salzman</u>, <u>Gregory Stephen Menegaz</u>, and <u>John Joseph Kenkel</u>, deKieffer & Horgan, PLLC of Washington, DC, for Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System Engineering Co., Ltd.

    <u>Douglas G. Edelschick</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With him on the brief were <u>Jeffrey Bossert Clarke</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Reginald T. Blades Jr</u>., Assistant Director. Of counsel on the brief was <u>Kirrin Hough</u>, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

    <u>Alan H. Price</u>, <u>Robert E. DeFrancesco, III</u>, and <u>Elizabeth S. Lee</u>, Wiley Rein LLP of Washington, DC, for Defendant-Intervenors Aluminum Extrusions Fair Trade Committee.

    Gordon, Judge: This action involves the final results of the 2013 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order on aluminum extrusions from the People's Republic of China ("PRC"). See <u>Aluminum Extrusions From the People's Republic of China</u>, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) (final results admin. rev.) ("<u>Final Results</u>"); <u>see also</u> accompanying Issues and Decision Memorandum, C-570-968 (Dep't of Commerce Dec. 7, 2015), available at https://enforcement.trade.gov/frn/summary/prc/2015-31425-1.pdf ("<u>Decision Memorandum</u>"); <u>Aluminum Extrusions from the People's Republic of China</u>, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) ("<u>CVD Order</u>").

    Before the court are the USCIT Rule 56.2 motions for judgment on the agency record filed by Plaintiff Taizhou United Imp. & Exp. Co. Ltd. ("Taizhou") and Consolidated

Consol. Court No. 16-00009                                                    Page 3

Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., and Shanghai Jangho Curtain Wall System Engineering Co., Ltd. (collectively, "Jangho"). See Pl.'s Mem. in Supp. of its 56.2 Mot. for J. on the Agency R., ECF No. 80; Consolidated Pl's Mem. In Supp. of its Mot. For J. on the Agency R., ECF No. 82-1 ("Jangho Br."); see also Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 88 ("Def.'s Resp."); Def.-Intervenors' Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 89; Pl. Taizhou's Reply Br., ECF No. 92; Consolidated Pls.' Reply Br., ECF No. 93 ("Jangho Reply").[1] The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)[2], and 28 U.S.C. § 1581(c) (2012).  For the reasons set forth below, the court grants Plaintiffs' motions as to Commerce's determinations to countervail subsidized purchases of glass and aluminum extrusions, and remands the Final Results to Commerce; however, the court sustains the Final Results as to all other issues raised by Plaintiffs.

---

[1] In July 2020, approximately three months after the conclusion of briefing the USCIT Rule 56.2 motion for judgment on the agency record, Jangho replaced their former counsel at Sandler, Travis & Rosenberg, PA with their current counsel. See ECF No. 96 (Form 12 Substitution of Attorney filed by J. Kevin Horgan to appear in place of Kristen S. Smith).

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

Consol. Court No. 16-00009                                                    Page 4

## I.    Background

Initially, Plaintiffs' claims included challenges to whether their products fell within the scope of the <u>CVD Order</u>. <u>See</u> Mem. In Supp. of Jangho's Mot. for J. on the Agency R. at 11–24, ECF No. 47. To promote judicial efficiency, the court stayed briefing in this action pending the resolution of <u>Guangzhou Jangho Wall Sys. Eng'g Co. v. United States</u>, Court Nos. 15-00023 & 15-00024, which involved identical challenges to the scope of Commerce's antidumping ("AD") and CVD Orders arising out of the second administrative review. <u>See</u> Order Granting Stay, ECF No. 63.

Under 19 C.F.R. § 351.225, an interested party may apply for a ruling from Commerce as to whether a particular product is within the scope of a CVD order. <u>See</u> 19 C.F.R. § 351.225. Yuanda USA Corporation and Shenyang Yuanda Aluminum Industry Engineering Co., Ltd. (collectively "Yuanda") requested a scope inquiry for its curtain wall units produced in the PRC, and Commerce issued a formal scope ruling that Yuanda's curtain wall units fell within the scope of the order. <u>See</u> <u>Aluminum Extrusions from the PRC</u>, A-570-967 & C-570-968 (Dep't of Commerce Mar. 27, 2014) (final scope ruling on curtain wall units produced and imported pursuant to contract to supply curtain wall), <u>available at</u> https://enforcement.trade.gov/download/prc-ae/scope/38-curtain-wall-units-7apr14.pdf ("Yuanda Scope Ruling").

Yuanda, and other foreign producers/exporters and importers of substantially identical curtain wall units (including Jangho), challenged the Yuanda Scope Ruling before this Court and the U.S. Court of Appeals for the Federal Circuit. <u>See</u> <u>Shenyang</u>

Yuanda Aluminum Eng'g Co. v. United States, 41 CIT ___, 279 F. Supp. 3d 1209 (2017),

aff'd, 918 F.3d 1355 (Fed. Cir. 2019). In sustaining the Yuanda Scope Ruling, the Federal

Circuit held that "curtain wall units . . . imported under a contract for an entire curtain wall"

are within the scope of the AD and CVD orders covering aluminum extrusions from the

PRC. See Shenyang Yuanda, 918 F.3d at 1358, 1368. Following the Federal Circuit's

decision in Shenyang Yuanda, Plaintiffs sought and obtained voluntary dismissals of their

complaints in Court Nos. 15-00023 & 15-00024. See Order of Dismissal under USCIT

R. 41(a)(1)(A)(ii), Court No. 15-00023, ECF No. 85; Order of Dismissal under USCIT

R. 41(a)(1)(A)(ii), Court No. 15-00024, ECF No. 83. In this action, Plaintiffs withdrew their

arguments related to scope, filed amended complaints, and the instant USCIT Rule 56.2

motions for judgment on the agency record. See Joint Status Report & Proposed Briefing

Schedule at 2, ECF No. 72.

    Plaintiffs challenge various aspects of Commerce's determinations in the Final

Results. First, Plaintiffs contend that Commerce unlawfully suspended Plaintiffs' entries

of subject merchandise prior to Commerce's initiation of a formal scope inquiry.  See

Jangho Br. at 9. Plaintiffs also contend that Commerce unreasonably found that they

benefitted from countervailable subsidies in the form of various preferential loans, tax

policies, and tax offsets. Id. at 16–20. Plaintiffs further argue that Commerce

unreasonably determined that glass and aluminum extrusions purchased for less than

adequate remuneration ("LTAR") may be countervailed as inputs to the subject

merchandise. Id. at 20–28. Alternatively, Plaintiffs maintain that even if Commerce may

Consol. Court No. 16-00009                                                    Page 6

lawfully countervail glass and aluminum extrusion inputs to the subject merchandise, "the administrative record provides no support for Commerce's arbitrary finding that suppliers are 'government entities,' that a benefit was indeed provided or that any alleged benefit was specific in nature, as required by the CVD statute." Id. at 28–38.

## II.    Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. Administrative Law and

Consol. Court No. 16-00009                                                    Page 7

Practice § 9.24[1] (3d ed. 2020). Therefore, when addressing a substantial evidence issue

raised by a party, the court analyzes whether the challenged agency action "was

reasonable given the circumstances presented by the whole record." 8A West's Fed.

Forms, National Courts § 3.6 (5th ed. 2020).

### III.     Discussion

### A.     Countervailing Duty of Aluminum Extrusions and Glass "Inputs" in Subject Merchandise

Plaintiffs argue that Commerce lacks the authority to countervail subsidies to glass

and aluminum extrusions as "inputs" to the subject merchandise. See Jangho Br.

at 20-28. With respect to Commerce's decision to countervail glass subsidies, Plaintiffs

argue that glass is outside of the scope of the CVD Order. Id. at 22. Plaintiffs highlight

that the language of the CVD Order expressly excludes from the scope of the order

"the non-aluminum extrusion components of subassemblies or subject kits." Id. at 24

(quoting CVD Order, 76 Fed. Reg. at 30,653–54). Plaintiffs also contend Commerce

lacked the authority to countervail aluminum extrusions. Id. at 27. Plaintiffs argue that

aluminum extrusions may not be countervailed because aluminum extrusions are the

subject merchandise, not an input used in the manufacture of subject merchandise. Id.

Plaintiffs note that although Commerce found that curtain wall units are subject to the

scope of the order in Yuanda Scope Ruling, only the aluminum extrusions contained in

curtain wall units constitute subject merchandise. Id. at 28.

Consol. Court No. 16-00009                                                     Page 8

Commerce found that parts of curtain walls, including curtain wall units, are included within the scope of the order. See Decision Memorandum at 96. Commerce does not dispute that it generally does not countervail subsidies tied to non-subject merchandise. Id. at 97. However, Commerce rejected Plaintiffs' arguments that glass is outside of the scope of the CVD Order, explaining:

> curtain wall units such as those produced by the Jangho Companies are considered subject merchandise. In other words, subject curtain wall units containing glass is a single commercial product. Glass is therefore an input used in the manufacture of subject merchandise, i.e., curtain wall units.

Id. at 97–98. Commerce thus found that it could countervail subsidies to glass inputs of curtain wall units, as the benefits derived from the purchase of glass for LTAR are tied to subject merchandise. Id.

Curtain wall units are subassemblies of curtain walls. See Shenyang Yuanda Aluminum Eng'g Co. v. United States, 918 F.3d 1355, 1367 (Fed. Cir. 2019) ("The only remaining issue for the curtain wall unit entries at issue here is whether they are excluded when viewed (correctly) as subassemblies. We see no error in Commerce's conclusion that they are not so excluded."); see also Shenyang Yuanda Aluminum Eng'g Co. v. United States, 776 F.3d 1351, 1358 (Fed. Cir. 2015) ("curtain wall units are undeniably components that are fastened together to form a completed curtain wall. Thus, they are 'parts for,' and 'subassemblies' for, completed curtain walls. A part or subassembly, here a curtain wall unit, cannot be a finished product." (internal citation and quotation omitted)).

Consol. Court No. 16-00009                                        Page 9

As subassemblies, curtain wall units are subject to the exclusion of their non-aluminum extrusion components from the order: "The scope does not include the non-aluminum extrusion components of subassemblies." <u>CVD Order</u>, 76 Fed. Reg. at 30,654. Commerce's conclusion that "a curtain wall unit is subject merchandise, inclusive of aluminum extrusions, glass, and all other components" unreasonably contravenes the plain language of the order. <u>See</u> <u>Decision Memorandum</u> at 100. The scope of the order covers aluminum extrusions, not glass, and the <u>CVD Order</u> expressly excludes the non-aluminum extrusion components of subassemblies like curtain wall units. It is therefore arbitrary to conclude the glass is subject merchandise. By the scope's definition, it is not. This is not arguable or subject to interpretation. The scope is clear. Commerce must abide by the clear scope language. The court will therefore remand this issue for Commerce to correct its analysis of the non-aluminum extrusion components of the curtain wall units. Those are not subject merchandise.

The more interesting question is Commerce's treatment of the aluminum extrusions component of the curtain wall units. Commerce countervailed the aluminum extrusion component as an input of the curtain wall unit. <u>Id.</u> That has a facial appeal if one erroneously concludes the subject merchandise is the curtain wall unit. The subject merchandise, however, is the aluminum extrusion component of the curtain wall units. To be clear, the subject merchandise is a curtain wall unit, which is a subassembly of a curtain wall, and does not include the non-aluminum extrusion components, which leaves, unsurprisingly, aluminum extrusions. It does ring pretty hollow to conclude that aluminum

extrusions are inputs for aluminum extrusions. The court cannot sustain that as reasonable. Commerce therefore needs to rethink its treatment of the aluminum extrusions in the curtain wall units, and how best to fully capture their subsidization. The court does understand that it is possible to subsidize the aluminum extrusions as an input for the curtain wall unit, and separately subsidize the curtain wall units. It is also possible in that scenario to double count the aluminum extrusion subsidies and overcompensate on the trade remedy. The hope is that on remand, Commerce can sort this out and determine the appropriate countervailable measures for the subject merchandise, aluminum extrusions.

### B.    Statutory Requirements for Countervailing Subsidies for Aluminum Extrusions and Glass

Because the court remands Commerce's determination that it may countervail glass and aluminum extrusions as inputs to the subject merchandise, <u>see</u> Section A <u>supra</u>, the court does not reach Plaintiffs' alternative arguments as to whether Commerce reasonably found that the statutory requirements of § 1677(5) were met with respect to Plaintiffs' aluminum extrusion and glass purchases. <u>See</u> Jangho Br. at 28–38.

### C.    Suspension of Plaintiffs' Entries and Application of 19 C.F.R. § 351.225

19 C.F.R. § 351.225 "contains rules regarding scope rulings, requests for scope rulings, procedures for scope inquiries, and standards used in determining whether a product is within the scope of an order or suspended investigation." <u>See</u> 19 C.F.R.

§ 351.225(a). Plaintiffs contend that the suspension of liquidation of their entries in this

matter violated § 351.225(l)(3), which provides:

> If the Secretary issues a final scope ruling, under either
> paragraph (d) or (f)(4) of this section, to the effect that the
> product in question is included within the scope of the order,
> any suspension of liquidation under paragraph (l)(1) or (l)(2)
> of this section will continue. Where there has been no
> suspension of liquidation, the Secretary will instruct the
> Customs Service to suspend liquidation and to require a cash
> deposit of estimated duties, at the applicable rate, for each
> unliquidated entry of the product entered, or withdrawn from
> warehouse, for consumption on or after the date of initiation
> of the scope inquiry. If the Secretary's final scope ruling is to
> the effect that the product in question is not included within
> the scope of the order, the Secretary will order any
> suspension of liquidation on the subject product ended and
> will instruct the Customs Service to refund any cash deposits
> or release any bonds relating to this product.

19 C.F.R. § 351.225(l)(3).

Plaintiff argues that "[b]ecause Commerce did not suspend liquidation of 'curtain

wall units that are produced and imported pursuant to a contract to supply a curtain wall'

prior to the initiation of the formal scope inquiry, entries of those products cannot be

suspended retroactively before that date" pursuant to this regulation. See Jangho Br.

at 9–15. Plaintiffs note that Commerce's liquidation instructions in the Yuanda Scope

Ruling specifically directed U.S. Customs and Border Protection ("Customs" or "CBP") to

"suspend liquidation of entries of curtain wall units that are produced and imported

pursuant to a contract to supply a curtain wall effective 5/10/2013, which is the date of the

initiation of the scope inquiry". Id. at 10. Plaintiffs maintain that based on these

instructions, entries of curtain wall units prior to May 10, 2013 should be excluded from suspension in the underlying administrative review. Id.

Commerce found the regulation was not applicable to the subject merchandise and rejected Plaintiffs' argument. See Decision Memorandum at 78–80. Specifically, Commerce noted that Plaintiffs' recitation of § 351.225(l)(3) omitted the key words "[w]here there has been no suspension of liquidation." Id. at 79. Commerce explained that "[t]he Jangho Companies' relevant entries were suspended prior to the date of initiation of the curtain wall units scope ruling," and the agency thus concluded that "[n]othing in 19 CFR 351.225(l)(3) prohibits CBP from suspending liquidation of these entries prior to the initiation of a scope inquiry." Id. Commerce thus concluded that, contrary to Plaintiffs' arguments, "the Department has not retroactively ordered the suspension of liquidation of any entries of the Jangho Companies' merchandise, although such merchandise may already have been properly suspended by CBP. … [T]he in-scope status of the Jangho Companies' curtain wall units and other curtain wall components and products subject to this review has been confirmed by the Department's scope ruling, by the CIT, and by the Federal Circuit in Shenyang Yuanda v. United States." Id. at 79–80. Accordingly, Commerce determined that the continued suspension of liquidation of the subject merchandise was proper. Id.

Plaintiffs argue that Commerce's interpretation of § 351.225(l)(3) is too simplistic, and that the existence of a pre-existing administrative review "does not free Commerce from adhering to the Yuanda Scope Ruling." Id. at 13.    Plaintiffs contend that

§ 351.225(l)(3) limits when Commerce can suspend liquidation of entries that were subject to a final scope ruling. Id. at 13–14.

Commerce explained that "suspension of entries of curtain wall parts began at the date of the preliminary determination in the countervailing duty investigation and properly continued through the completion of the relevant scope inquiry on curtain wall units pursuant to 19 C.F.R. § 351.225(l)(1) and (3)." See Decision Memorandum at 80. Commerce disagreed with Plaintiffs' contention that the agency "retroactively assessed duties on Jangho's entries," and explained that "curtain wall parts are, and always have been, subject to the CVD order." Id. (citing Aluminum Extrusions from the People's Republic of China, 75 Fed. Reg. 54,302, 54,303 (Dep't of Commerce Sept. 7, 2010) (prelim. determ. CVD investigation) ("Preliminary Determination")). Commerce emphasized the limiting language, "[w]here there has been no suspension of liquidation," in § 351.225(l)(3), and determined that the regulation did not limit Commerce's authority to suspend liquidation of Plaintiffs' entries. Id.

The court agrees with Commerce that the agency's suspension of liquidation of Plaintiffs' entries did not violate § 351.225(l)(3) for the reasons provided in the Decision Memorandum. Plaintiffs' arguments focusing on the language of Commerce's liquidation instructions and highlighting precedent where Commerce was not permitted to retroactively suspend liquidation of entries, see Jangho Br. at 11–12, ignore the crucial distinguishing fact in this matter that Plaintiffs' entries were lawfully suspended pursuant to the Preliminary Determination prior to the May 2013 Yuanda Scope Ruling.

See Decision Memorandum at 79–80. The court agrees that because Plaintiffs' entries were already lawfully suspended at the time of the Yuanda Scope Ruling, § 351.225(l)(3) did not limit the Government's authority to continue suspending those entries. Accordingly, the court rejects Plaintiffs' arguments that the suspension of liquidation of entries of subject merchandise prior to the issuance of the Yuanda Scope Ruling violated § 351.225(l)(3).

### D.    Application of 19 U.S.C. § 1677(5)(B) to PRC Banks

Under 19 U.S.C. § 1677(5) there are four requirements that Commerce must find in order to determine that a foreign program constitutes a countervailable subsidy. Specifically, in order to find a "subsidy" Commerce must find that an "authority" provided a "financial contribution" in which a "benefit" is conferred. See 19 U.S.C. § 1677(5). Each of these terms is defined in the statute. See 19 U.S.C. § 1677(5)(B)(iii) (defining "authority"); 19 U.S.C. § 1677(5)(D) (defining "financial contribution"); 19 U.S.C. § 1677(5)(E) (defining when a "benefit" is "conferred"). Additionally, in order for a subsidy to be countervailable under the statute, Commerce must find that the subsidy is "specific" under the criteria set forth in § 1677(5A).

Plaintiffs contend that Commerce erroneously found that PRC banks constitute "authorities" as defined in § 1677(5)(B)(iii). Jangho Br. at 16–19. Plaintiffs maintain that "the underlying administrative record demonstrates that banks made lending decisions based upon sound commercial considerations, not government policy goals." Id. at 16. Jangho argues that Chinese banks operate based on rules and regulations that require

them to make decisions based on commercial considerations. Id. (referencing the Interim Measures for the Administration of Working Capital Loans ("Interim Measures")).  Jangho highlights the Government of China's ("GOC") questionnaire response that states that it is an "explicit requirement of Interim Measures that the issuance of working capital loans shall be prudently decided by banks based on a reasonable estimation of the borrower's working capital demand and fair consideration of cash flow, liabilities, repayment ability, guarantee status and other factors of the borrower."  Id. at 16–17.

Commerce continued to find, "as it has in prior segments of this proceeding, that the GOC had a policy in place to encourage the development of the production of aluminum extrusions through policy lending, and that Chinese [state-owned commercial banks ("SOCBs")] are authorities under the countervailing duty law." See Decision Memorandum at 83. Commerce explained that "[i]n the Aluminum Extrusions from the PRC Investigation, Aluminum Extrusions from the PRC First Review, and Aluminum Extrusions from the PRC Second Review, we determined that the GOC had a policy in place to encourage the development of the production of aluminum extrusions through policy lending. In the instant administrative review, the GOC's discussions of the lending practices of financial institutions echoed the discussion in previous administrative reviews." Id. at 43. Commerce also relied on its finding in Coated Free Sheets Paper from the People's Republic of China ("CFS from the PRC"): "that the PRC's banking sector does not operate on a commercial basis and is subject to significant distortions, primarily arising out of the continued dominant role of the government in the financial system and

the government's use of banks to effectuate policy objectives." Id. (quoting  CFS from the

PRC, 72 Fed. Reg. 60,645 (Dep't of Commerce Oct. 25, 2007) (final affirmative CVD

determ.)). Commerce explained that it found Chinese SOCBs to be "authorities" within

the meaning of § 1677(5)(B)(iii), and further noted that this finding was not based on

"government ownership alone." Id. at 84 (quoting from CFS from the PRC that

"information on the record indicates that the PRC's banking system remains under State

control and continues to suffer from the legacies associated with the longstanding pursuit

of government policy objectives. These factors undermine the SOCBs ability to act on a

commercial basis and allow for continued government control resulting in the allocation

of credit in accordance with government policies. Therefore, treatment of SOCBs in China

as commercial banks is not warranted in this case."). Commerce explained that "[i]n order

to revisit the determination in CFS from the PRC, there must be evidence warranting

reconsideration," and found that "there is no such evidence on the record of this

administrative review." Id.

Commerce rejected Plaintiffs' arguments based on the Interim Measures, noting

that it had previously considered the impact of these measures with respect to similar

arguments made in "Aluminum Extrusions from the PRC First Review and determined

that there is no basis to conclude that the GOC's policy lending activities ceased with the

issuance of the Interim Measures." Id. at 44. Specifically, Commerce highlighted that

"Article 34 of the [Law of the People's Republic of China on Commercial Banks ("Banking

Law")] states that banks should carry out their loan business 'under the guidance of the

Consol. Court No. 16-00009                                    Page 17

state industrial policies.'" Id. Commerce explained its determination that "[i]n the instant

review, because the Interim Measures are 'fully consistent' with the Banking Law, we

determine, consistent with prior determinations, that they do not constitute evidence that

the GOC ceased policy lending to the aluminum extrusions industry, despite any changes

to lending practices asserted by the GOC." Id. Commerce therefore concluded that "loans

to aluminum extrusion producers from SOCBs and policy banks in the PRC were made

pursuant to government directives and, thus, constitute a direct financial contribution from

'authorities,'" pursuant to § 1677(5A)(D)(i). Id.

　　　While Plaintiffs would prefer that Commerce consider the language of the Interim

Measures in isolation and draw an inference that Chinese SOCBs operate according to

commercial principles without regard to state policy, Plaintiffs have failed to demonstrate

that their position is the one and only reasonable conclusion that Commerce could reach

on the record. See Tianjin Wanhua Co. v. United States, 40 CIT ___, ___, 179 F. Supp.

3d 1062, 1071 (2016); Globe Metallurgical, Inc. v. United States, 36 CIT ___, ___, 865 F.

Supp. 2d 1269, 1276 (2012) (substantial evidence review "contemplates [that] more than

one reasonable outcome is possible on a given administrative record"). Accordingly, the

court sustains Commerce's determination that Plaintiffs' received countervailable policy

loans.

**E.    Specificity of Tax Policies for High or New Technology Enterprises and Tax Offsets for Research and Development Under 19 U.S.C. § 1677(5A)**

A subsidy is specific as a matter of law "[w]here the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry." 19 U.S.C. § 1677(5A)(D)(i). Commerce determined that Preferential Tax Policies for High or New Technology Enterprises ("HTNEs"), as well as the Tax Offsets for Research and Development ("R&D") Program, are specific as a matter of law under 19 U.S.C. § 1677(5A)(D)(i). See Decision Memorandum at 88–93. Plaintiffs challenge Commerce's findings of de jure specificity with respect to both programs. See Jangho Br. at 19–20.

Plaintiffs contend that the HTNE policies apply to a number of different industries such that Commerce could not reasonably conclude that "the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry." Id. at 19 (citing 19 U.S.C. § 1677(5A)(D)(i)). In support of their argument, Plaintiffs point to the annex of the Measures of Recognition of HTNEs, a list comprised of eight high and new technology areas that qualify for support under Article 28.2 of the PRC's Regulations on Implementation of the Enterprise Income Tax Law. Id. Plaintiffs argue that because each category is further broken down into 39 sub-areas, and more than 200 specific areas, the HTNE tax policies apply to various different industries and therefore are not specific under § 1677(5A)(D)(i). Id.

Commerce disagreed and determined that the HTNE tax program is de jure specific in accordance with 19 U.S.C. § 1677(5)(D)(i) because the qualifying industries are limited to eight specified industries. See Decision Memorandum at 89. Commerce relied on its finding in a previous proceeding evaluating the same HTNE tax program that "the reduction afforded by this program is limited as a matter of law to certain new and high technology companies selected by the government pursuant to legal guidelines specified in Measures on Recognition of HNTEs, and, hence, is specific under section 771(5A)(D)(i) of the Act." Id. (referencing Citric Acid and Certain Citrate Salts From the People's Republic of China, 76 Fed. Reg. 77,206 (Dep't of Commerce Dec. 12, 2011) (CVD review final results) ("Citric Acid and Certain Citrate Salts From the PRC"). Commerce further found that "[b]oth the number of targeted industries (eight) and the narrowness of the identified project areas under those industries support a finding that the legislation expressly limits access to the program to a specific group of enterprises or industries." Id. Commerce found no new information on the record of this proceeding that called into question its prior finding of specificity as to the HTNE tax program. Id. Commerce noted that in its initial questionnaire, Commerce provided the opportunity for the GOC to report any changes to programs that Commerce had previously evaluated. Id. at 90. GOC responded that there were no changes during the POR to the HTNE tax program. Id.

Commerce's conclusion that the HTNE tax program was "specific" under § 1677(5A)(D)(i) was reasonable. Commerce relied on undisputed evidence in the record,

as well as its past findings analyzing the same programs in prior segments of this proceeding and other proceedings, to determine that the HTNE tax program was expressly limited by legislation to be available to only to eight specified industries. The fact that those industries can be further subdivided into various sub-categories does not establish that Commerce's specificity finding under § 1677(5A)(D)(i) was unreasonable.

With respect to Commerce's finding of de jure specificity under § 1677(5A)(D)(i) as to the tax offset for R&D, Plaintiffs similarly contend that this finding was unreasonable. See Jangho Br. at 20. Specifically, Plaintiffs provide a three-sentence argument that "Commerce points to no evidence on the administrative record that such a policy exists for the POR. It does not. As explained by the GOC, there is no policy targeting the aluminum extrusions industry for development and assistance." Id. Plaintiffs provide no additional argument on this issue in their reply brief. See generally Jangho Reply.

Contrary to Plaintiffs' contentions, Commerce explained why its finding of specificity with respect to the R&D tax offset program was supported by the evidence in the record. See Decision Memorandum at 50 (noting that "The Program is administered pursuant to the 'Trial Administrative Measures for the Pre-Tax Deduction of Enterprises R&D Expenses' ("R&D Measures")", and that "Article 5 of the R&D Measures states that eligible R&D projects shall be in line with national and Guangdong provincial technological policies and industrial policies."). Commerce further explained that it had found that "the GOC has targeted the aluminum extrusions industry for development and assistance in a manner that is specific under [§ 1677(5A)(D)(i)], as illustrated in the government plans

Consol. Court No. 16-00009                                                      Page 21

and directives, to encourage and support the growth and development of the aluminum

extrusions industry." Id. at 51. "Given this finding and in light of the language in Article 5

of the R&D Measures," Commerce "determined that tax reduction under this program are

de jure specific within the meaning of [§ 1677(5A)(D)(i)]." Id. Moreover, Commerce noted

that it had provided the GOC the opportunity to provide additional information with respect

to the R&D tax offset program, and that the "GOC responded: 'There were no changes

during the POR to this program.'" Id. at 93.

    In light of Commerce's findings and explanation, the court cannot see how it can

conclude that Commerce's determination of specificity as to the R&D tax offset program

was unreasonable, especially given Plaintiffs' barebones challenge. Accordingly, the

court sustains Commerce's determinations that the HTNE and R&D tax programs were

specific as a matter of law under § 1677(5A)(D)(i).

## IV.    Conclusion

    For the foregoing reasons, it is hereby

    **ORDERED** that this matter is remanded for Commerce to give effect to the CVD

Order's language excluding "non-aluminum extrusion components of subassemblies"

from the scope of the order; it is further

    **ORDERED** that on remand Commerce shall reconsider and further explain its

countervailing of aluminum extrusion "inputs" to the subject merchandise; it is further

    **ORDERED** that all other challenged aspects of Commerce's Final Results are

sustained; it is further

Case 1:16-cv-00009-LMG    Document 100-9    Filed 09/25/20    Page 22 of 22

Consol. Court No. 16-00009                                              Page 22

     **ORDERED** that Commerce shall file its remand results on or before November 24, 2020; and it is further

     **ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.


                                                     /s/ Leo M. Gordon
                                             Judge Leo M. Gordon



Dated: September 25, 2020
       New York, New York

Slip Op. 22-14

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., | |
| Plaintiff, | |
| and | |
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO GROUP CO., LTD., BEIJING JIANGHEYUAN HOLDING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO CURTAIN WALL HONG KONG LTD., SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., | Before: Leo M. Gordon, Judge |
| Consolidated Plaintiffs, | Consol. Court No. 16-00009 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | |
| Defendant-Intervenor. | |

### OPINION

[Remand Results sustained.]

Dated: February 18, 2022

Douglas J. Heffner and Richard P. Ferrin, Drinker Biddle & Reath LLP of Washington, D.C., for Plaintiff Taizhou United Imp. & Exp. Co. Ltd.

   J. Kevin Horgan, Alexandra H. Salzman, Gregory S. Menegaz, and John J. Kenkel, deKieffer & Horgan, PLLC of Washington, D.C., for Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System Engineering Co., Ltd.

   Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C., for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades Jr., Assistant Director.  Of counsel on the brief was Kirrin Hough, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, D.C.

   Alan H. Price, Robert E. DeFrancesco, III, and Elizabeth S. Lee, Wiley Rein LLP of Washington, D.C., for Defendant-Intervenors Aluminum Extrusions Fair Trade Committee.

   Gordon, Judge: This action involves the final results of the 2013 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order on aluminum extrusions from the People's Republic of China.  See Aluminum Extrusions From the People's Republic of China, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) ("Final Results"), and the accompanying Issues and Decision Memorandum, C-570-968 (Dep't of Commerce Dec. 7, 2015), available at https://enforcement.trade.gov/frn/summary/prc/2015-31425-1.pdf ("Decision Memorandum"); see also Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) ("CVD Order").  Plaintiff Taizhou United Imp. & Exp. Co. Ltd., along with Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System

Consol. Court No. 16-00009                                                          Page 3

Engineering Co., Ltd. (collectively "Jangho"), challenged various aspects of Commerce's

determinations in the Final Results.

     The court presumes familiarity with the history of this action.  See Taizhou United

Imp. & Exp. Co. v. United States, 44 CIT ___, 475 F. Supp. 3d 1305 (2020) ("Taizhou I");

see also Remand Results at 2–5 (explaining history of case); Shenyang Yuanda

Aluminum Eng'g Co. v. United States, 41 CIT ___,  279 F. Supp. 3d 1209 (2017), aff'd,

918 F.3d 1355 (Fed. Cir. 2019) (affirming Commerce's determination that curtain wall

units imported under contract for an entire curtain wall are subject to the CVD Order);

Shenyang Yuanda Aluminum Industry Eng'g Co. v. United States, 38 CIT ___, 961 F.

Supp. 2d 1291 (2014), aff'd, 776 F.3d 1351, 1358 (Fed. Cir. 2015) (affirming Commerce's

determination that parts of curtain wall units are subject to the CVD Order); Antidumping

Duty and Countervailing Duty Orders on Aluminum Extrusions from the People's Republic

of China (Dep't of Commerce Mar. 27, 2014) (final scope ruling on curtain wall units

produced  and  imported  as  part  of  contract  to  supply  curtain  wall), available at

https://enforcement.trade.gov/download/prc-ae/scope/38-curtain-wall-units-7apr14.pdf.

In Taizhou I, the court sustained the Final Results as to almost all of the issues raised

by Plaintiffs; however, the court remanded Commerce's determinations to countervail

subsidized purchases of glass and aluminum extrusions for further explanation and

reconsideration.  Id.

     Before the court are Commerce's Final Results of Redetermination Pursuant

to Court Remand, ECF No. 103 ("Remand Results"), filed pursuant to Taizhou I.

On remand, Commerce "continue[d] to find that the provision of glass and aluminum

Consol. Court No. 16-00009                                                      Page 4

extrusions for less than adequate remuneration ("LTAR") are countervailable."
See Remand Results at 2.   Plaintiffs now challenge just Commerce's determination
to continue to countervail subsidized glass purchases for LTAR.   See Consolidated
Plaintiffs' Comments on Remand Redetermination, ECF No. 109 ("Jangho Comments");
Plaintiff's Comments in Opp'n to Remand Results, ECF No. 110 (incorporating Jangho's
Comments by reference); see also Defendant's Corrected Response to Comments on
Remand Redetermination, ECF No. 117 ("Def.'s Resp."); Defendant-Intervenor's
Response Comments on Remand Redetermination, ECF No. 114.   The court has
jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended,
19 U.S.C. § 1516a(a)(2)(B)(iii)[1], and 28 U.S.C. § 1581(c) (2018).   For the reasons set
forth below, the court sustains the Remand Results.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless
they are "unsupported by substantial evidence on the record, or otherwise not
in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing
agency determinations, findings, or conclusions for substantial evidence, the court
assesses whether the agency action is reasonable given the record as a whole.   Nippon
Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).   Substantial
evidence has been described as "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."   DuPont Teijin Films USA v. United States,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of
Title 19 of the U.S. Code, 2018 edition.

407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2021).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2021).

## II. Discussion

A subsidy is countervailable if: (1) a government or public authority has provided a financial contribution; (2) a benefit is thereby conferred upon the recipient of the financial contribution; and (3) the subsidy is specific to a foreign enterprise or foreign industry, or a group of such enterprises or industries.  19 U.S.C. § 1677(5).  "A benefit shall normally be treated as conferred" to the recipient where goods or services are provided to the foreign manufacturer or producer of the subject merchandise for LTAR.  See 19 U.S.C. § 1677(5)(E)(iv); see also 19 C.F.R. § 351.511(a)(1).  Commerce "normally will consider a benefit to be conferred where a firm pays less for its inputs (e.g., money, a good, or a service) than it otherwise would pay in the absence of the

government program or receives more revenues than it otherwise would earn." <u>See</u> 19 C.F.R. § 351.503(b)(1).

### A. Glass Inputs

### 1. Proceedings Below

In the underlying administrative review, Commerce found that "glass is an input used in the manufacture of subject merchandise," and "accordingly, benefits arising from the provision of glass for LTAR are [countervailable as those benefits are] not tied to non-subject merchandise." <u>See</u> <u>Decision Memorandum</u> at 97–98. Commerce disagreed with Plaintiffs that Commerce's decision to countervail glass violated language in the <u>CVD Order</u> that excluded "non-aluminum extrusion components of subassemblies." <u>Id.</u> Rather, Commerce found that Plaintiffs' reliance on the exclusionary language was misplaced:

> Regardless of the Jangho Companies' and the GOC's arguments with respect to that language of the scope, this does not affect our ability to countervail glass for LTAR. As discussed, curtain wall units are subject merchandise and the inputs at issue are used in the production of subject merchandise. Thus, there is no basis to make a finding that the subsidy benefits for glass are tied to non-subject merchandise. In light of the foregoing, we find it is thus appropriate for the Department to continue to countervail the glass for LTAR program.

<u>Id.</u>

In reviewing Commerce's treatment of glass, the court stated that it could not understand how Commerce could reconcile its conclusion that "a curtain wall unit is subject merchandise, inclusive of aluminum extrusions, glass, and all other

components" with the plain language of the <u>CVD Order</u>.  <u>See</u> <u>Taizhou I</u>, 44 CIT at ___,

475 F. Supp. 3d at 1310–11.  Commerce's unclear references to its "tying" practice and

how it applied its tying analysis in the underlying administrative review led the court

to remand this issue.  The court held that "the scope of the order covers aluminum

extrusions, not glass, and the <u>CVD Order</u> expressly excludes the nonaluminum extrusion

components of subassemblies like curtain wall units."  <u>See</u> <u>Taizhou I</u>, 44 CIT at ___,

475 F. Supp. 3d at 1311.  The court thus concluded that "[i]t is therefore arbitrary

to conclude the glass is subject merchandise," and directed that "Commerce must abide

by the clear scope language."  <u>Id.</u>

On remand, Plaintiffs again focused on the plain language of the <u>CVD Order</u>

excluding non-aluminum extrusion inputs, like glass, from the scope of the order,

regardless of whether the input is subsidized.  Plaintiffs maintained that subsidized

purchases of glass should be excluded from Commerce's benefits analysis and the

resulting calculus of the net subsidy rate.  Commerce disagreed, stating that its benefits

analysis, and thus the net subsidy rate, is to reflect any benefit received on any input

obtained for LTAR regardless of what the respondent company does with the subsidy,

unless such company demonstrates that the subsidy is not tied to the subject

merchandise.  <u>See</u> <u>Remand Results</u> at 7–11.  Commerce further explained that

the exclusionary language in the <u>CVD Order</u> is given effect when U.S. Customs and

Border Protection ("CBP") assesses respondents' duty liability "solely on the value

of the aluminum extrusion components included in the curtain wall unit, exclusive

of the value of the glass and any other non-aluminum extrusion[] components, when the respective values and necessary information are reported to CBP." Id. at 12.

Commerce recognized that the articulation of its rationale in the Decision Memorandum may have been "somewhat confusing." Id. at 7 (quoting, with emphasis, Decision Memorandum statement that "benefits arising from the provision of glass for LTAR are not tied to non-subject merchandise"). Commerce clarified that its "benefit analysis examines whether the respondent company has been provided a subsidy that confers a benefit to the company, not whether the benefit can be shown to flow directly to its production of subject merchandise." Id. at 8. Commerce noted that it is authorized to find a countervailable subsidy from the government provision of any good for LTAR that results in a benefit to the recipient company. Id. at 8–9 (quoting, with emphasis, the Preamble to Countervailing Duties; Final Rule, 63 Fed. Reg. 65,348 (Dep't of Commerce Nov. 25, 1998) ("[W]hen we talk about input costs in the context of the definition of benefit, we are not referring to cost of production in a strict accounting sense. Nor are we referring exclusively to inputs into subject merchandise. Instead, we intend the term 'input' to extend broadly to any input into a firm that produces subject merchandise.")). Commerce explained that it has relied on this guidance in prior matters where it has found "that inputs obtained for LTAR could be countervailed, even when the inputs were not used in the production of the subject merchandise." See Remand Results at 9 (noting that governing statutes and regulations do not contain limiting language and "do not require that the goods provided for LTAR be used, exclusively

or otherwise, in the production of subject merchandise; they merely refer to those goods that are provided for LTAR to the producer of the subject merchandise").

Commerce went on to note that its explanation in the <u>Decision Memorandum</u> reflected its analysis of whether to apply the exception to not countervail subsidies demonstrably tied to the production or sale of particular non-subject merchandise. <u>Id.</u> at 10. It appears that Commerce initially focused on the fact that glass is an input used in the manufacture of subject merchandise and is therefore countervailable because the benefits derived from the purchase of glass for LTAR are intertwined with the subject merchandise. <u>See</u> <u>Decision Memorandum</u> at 97–98; <u>see also</u> Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R. at 23, ECF No. 88 ("Commerce also determined that each curtain wall unit contains glass, and, therefore, glass is an input used in the manufacture of subject merchandise. <u>Thus, the benefits arising from the provision of glass for less than adequate remuneration are tied to subject merchandise and, thus, are countervailable benefits</u> under 19 U.S.C. § 1677(5)(E)(iv)." (emphasis added)); <u>cf.</u> <u>Remand Results</u> at 7 ("The Court's concern over our decision to countervail glass for LTAR appears to be based on its understanding that we determined that 'the benefits derived from the purchase of glass for LTAR are tied to subject merchandise.' <u>We made no such determination</u>. Rather, our decision to countervail the provision of glass for LTAR is in accordance with law and with our practice, which recognizes that the provision of goods for LTAR is not a subsidy that is tied to the production of particular merchandise and, as such, <u>we find that it is neither tied to the production of subject merchandise nor to the production of non-subject merchandise</u>. Further, the manner in which

our determination of the respondents' respective net subsidy rates is applied, i.e., when duties are assessed, gives effect to the scope of the Orders." (emphasis added)).

In the remand, Commerce re-examined and reaffirmed its decision to countervail the provision of glass for LTAR, explaining that the "provision of goods for LTAR is not a subsidy that is tied to the production of particular merchandise" and that the provision of glass for LTAR to respondents "is neither tied to the production of subject merchandise nor to the production of non-subject merchandise." See Remand Results at 7. Commerce further noted that its authority to countervail subsidies under 19 U.S.C. § 1677(5)(E)(iv) and 19 C.F.R. § 351.511(a)(1) is not limited to goods that are used in the production of subject merchandise or are themselves subject merchandise. See id. at 8 (explaining that relevant statutory and regulatory provisions enable Commerce to countervail "goods and services" provided for LTAR, and that "[t]he use of the general term 'good' without any modifier indicates that Commerce may consider a broad scope of goods, and not just inputs into the production of subject merchandise or inputs that are themselves subject merchandise").

Commerce explained that it generally countervails all or most goods provided at LTAR, unless a respondent can show that the good was "tied" to non-subject merchandise, meaning that the subsidized good was purchased with an intent for its dedicated use in the production of non-subject merchandise. See Remand Results at 10–11 ("Under its longstanding 'tying' methodology, Commerce may find that a subsidy is tied to a particular product, or other subset of the company's operations, where there is clear and robust information showing the subsidy was in fact tied at the point

of bestowal; otherwise, the subsidy is "untied" and benefits the company's overall operations."); <u>id.</u> at 18 ("Absent substantive evidence of 'tying,' Commerce's practice has been to treat the subsidy as 'untied' and attribute the subsidy to the company's overall production pursuant to subsection 351.525(b)(3)."). Here, Commerce found that the record did not establish that the subsidized glass purchases were "tied" to non-subject merchandise, and consequently included the glass purchased for LTAR in its subsidy analysis. See <u>id.</u> at 11, 21 ("In the instant review, the record contained no evidence, at the time of the bestowal of the glass, <u>i.e.</u>, a point prior to or concurrent with the provision of the glass, that established an intentional restriction of the subsidy to non-subject merchandise.").

## 2. Analysis

Plaintiffs argue that Commerce based its determination on a finding that glass was an input for subject merchandise and not whether the benefit was tied to non-subject merchandise. See Jangho Comments at 6 ("The Department did not base its determination on a finding that the benefits were not tied to non-subject merchandise, <u>i.e.</u>, glass. The Department based its determination on a finding that glass was an input for subject merchandise."). Plaintiffs further maintain that the record demonstrates that the subsidized glass was "tied to non-subject merchandise." <u>Id.</u> at 7. Plaintiffs therefore conclude that "the facts of this case and Court's [decision in <u>Taizhou I</u>] require the Department to treat glass subsidies as tied to non-subject merchandise." See <u>id.</u> at 9. The court does not agree.

Consol. Court No. 16-00009                                                Page 12

Plaintiffs' initial argument consists largely of conclusory statements.  See id. at 7

("There is also no reasonable basis in the record for concluding that the subsidies

bestowed by the provision of glass at LTAR are not tied to non-subject merchandise.

The Department now apparently agrees that glass is not an input for aluminum

extrusions.  Thus, LTAR glass purchases are not tied to the production of aluminum

extrusions.").  The consequence is that Plaintiffs have failed to engage with Commerce's

clarification of its analysis and further explanation set forth in the Remand Results.

Commerce explained that the relevant regulatory and statutory provisions—19 U.S.C.

§§ 1677(5) & (5A), as well as 19 C.F.R. §§ 351.503 & 351.511—allow Commerce

to countervail goods provided to respondents at LTAR, and that these provisions "do not

require that the goods provided for LTAR be used, exclusively or otherwise, in the

production of subject merchandise."  Remand Results at 9.  Commerce noted that limiting

its authority to countervail subsidies to only direct inputs of subject merchandise, as urged

by Plaintiffs, "would create a loophole that would undermine the intent of the

countervailing duty law by preventing Commerce from addressing the injury resulting from

the provision of subsidies by foreign governments via goods that benefit the general

operation of a producer."  Id. at 10.  Commerce further explained that it has consistently

countervailed the provision for LTAR of goods, concluding that "inputs obtained for LTAR

could be countervailed, even when the inputs were not used in the production of the

subject merchandise."  Id. at 9 (citing Circular Welded Austenitic Stainless Pressure Pipe

from the People's Republic of China, 74 Fed. Reg. 4,936 (Dep't of Commerce Jan. 28,

2009) (final affirm. CVD determ.), and accompanying Issues and Decision Memorandum at 18).

Additionally, Plaintiffs' argument that there is no reasonable basis in the record to conclude that the subsidized glass purchases are <u>not</u> tied to non-subject merchandise flips the burden of proof. It is Plaintiffs' obligation to put information on the record that would provide a basis for Commerce to reach Plaintiffs' desired conclusion, namely that the subsidized glass purchases were dedicated to use in the production of "non-subject merchandise" leading Commerce to exclude those subsidies from its benefits analysis. <u>See</u> <u>Tianjin Wanhua Co. v. United States</u>, 40 CIT ___, ___, 179 F. Supp. 3d 1062, 1071 (2016) (noting that plaintiff must demonstrate that its preferred evidentiary finding is "the one and only reasonable" outcome on the administrative record, "not simply that [its preferred finding] may have constituted another possible reasonable choice").

As noted above, Plaintiffs point to nothing in the record demonstrating that their subsidized glass purchases were tied to non-subject merchandise. Plaintiffs do not identify any non-subject merchandise to which the glass may have been "tied." <u>See</u> Jangho Comments at 5 (arguing that benefit of "LTAR glass purchases" was "tied to non-subject merchandise, <u>i.e.</u>, glass"). Commerce found that Jangho's purchases of glass for LTAR were not designated for a certain subset of its production (<u>i.e.</u>, non-subject merchandise) when it purchased the glass. <u>See</u> <u>Remand Results</u> at 22 ("Jangho also argues that its subsidies based on purchases of glass for LTAR were directly tied to sales of glass by Jangho. However, as Jangho states, it sold curtain wall units, which are subject to the <u>CVD Order</u> on aluminum extrusions, and which included

glass as a component; Jangho did not sell glass itself.  Even so, we find no merit in Jangho's attempt to claim its glass for LTAR subsidies were tied to particular sales. Commerce makes determinations regarding the tying of subsidies based on record evidence showing the express intent for the use of the subsidy in a specified subset of a company's <u>production</u>, and the record of this proceeding includes no evidence establishing that Jangho's purchases of glass for LTAR were designated for a certain subset of its production when it purchased the glass.").  After assessing the record as a whole, Commerce determined that Plaintiffs failed to establish tying of the subsidy to non-subject merchandise, and therefore reaffirmed its determination to countervail respondents' purchases of glass for LTAR.  <u>See</u> <u>Remand Results</u> at 11.  Given this, the court concludes that Commerce's analysis and determination are reasonable.

Next, the court turns to Plaintiffs' contention that the <u>Remand Results</u> do not comply with <u>Taizhou I</u>, which directed Commerce to "give effect to the Order's language excluding 'non-aluminum extrusion components of subassemblies' from the scope of the order."  <u>See</u> Jangho Comments at 3; <u>see also id.</u> at 9 (arguing that "the facts of this case and Court's original judgment require the Department to treat glass subsidies as tied to non-subject merchandise").  Plaintiffs' arguments ignore the fact that the standard for the court's review is whether Commerce's decision-making is reasonable given the circumstances provided by the record as a whole, not whether the agency "complied with the court's order."  <u>See</u> 19 U.S.C. § 1516a(b)(1)(B)(i).  Commerce's initial explanation concluded that "a curtain wall unit is subject merchandise, inclusive of aluminum extrusions, glass, and all other components."  <u>See</u> <u>Decision Memorandum</u> at 100.

Consol. Court No. 16-00009                                                Page 15

Based on that, Commerce determined that glass is a subsidized input included in a curtain wall unit that is subject merchandise under the <u>CVD Order</u>. <u>Id.</u> at 98. As stated previously, the court could not understand how Commerce's limited analysis and explanation in the <u>Decision Memorandum</u>, and as defended in Defendant's Response in Opposition to Plaintiff's Motion for Judgment on the Agency Record, ECF No. 88, did not contravene the plain language of the <u>CVD Order</u>. <u>See</u> <u>supra</u> at pp. 6–9; <u>Taizhou I</u>, 44 CIT at ___, 475 F. Supp. 3d at 1311. Accordingly, the court directed Commerce to "give effect to the <u>CVD Order</u>'s language excluding non-aluminum extrusion components of subassemblies from the scope of the order." <u>Id.</u>

Although the court "remand[ed] this issue for Commerce to correct its analysis of the non-aluminum extrusion components of the curtain wall units," <u>see</u> <u>id.</u>, Plaintiffs' challenge to the <u>Remand Results</u> focuses solely on a narrow reading of the language in the court's remand order rather than the substance of the <u>Remand Results</u>. Plaintiffs contend that Commerce's "remand results clearly do not comply" with the court's remand order and the further explanation "does not give effect to clear scope of language of the <u>CVD Order</u>." <u>See</u> Jangho Comments at 3. On remand, however, Commerce provided a more thorough explanation as to how and why its decision to countervail subsidized glass was in accordance with the statutory scheme and did not violate the language of the <u>CVD Order</u>. <u>See</u> <u>Remand Results</u> at 7–12 ("even though Commerce's subsidy analysis includes benefits received through the provision of glass for LTAR, the calculation by U.S. Customs and Border Protection (CBP) of the respondents' duty liability is based solely on the entered value of the aluminum

extrusions subject to the Orders. Therefore, the liability is calculated based solely on the value of the aluminum extrusion components included in the curtain wall unit, exclusive of the value of the glass and any other non-aluminum extrusion[] components, when the respective values and necessary information are reported to CBP.").

Alternatively, Plaintiffs argue that even if the court reaches the merits of Commerce's remand redetermination, the court should reject the agency or counsel's attempt to substitute a post hoc rationalization of its determination for its actual determination. See Jangho Comments at 4. "The courts may not accept counsel's post hoc rationalizations for agency action … it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." See SEC v. Chenery, 332 U.S. 194, 196 (1947). There is a difference between a post hoc rationalization and clarification of the reasoning underlying Commerce's decision-making. Here, Commerce, not its U.S. Department of Justice counsel, clarified and further explained on remand the rationale underlying its original (and continued) determination without resorting to novel arguments or legal interpretations. Therefore, the court does not agree that the Remand Results reflect an impermissible post hoc rationalization of Commerce's initial determinations.

Plaintiffs also contend that the subsidy for glass is "obviously tied to non-subject merchandise" but offer no support for this "obvious" contention. See Jangho Comments at 7. Plaintiffs' comments suggest that Commerce should examine the use and effect of a subsidy to determine whether the subsidy is tied to subject merchandise. See id. at 8 (noting that "the record shows that the purpose of the subsidies was to promote

the Chinese glass industry" and contending that "[a]ny benefit to glass purchasers was incidental to the purpose of the subsidies."). Commerce refused to conduct such an examination, explaining that "Commerce has a well-established practice of not considering the use and effect of subsidies." Remand Results at 9, 11 (citing Certain Steel Nails from the Sultanate of Oman, 80 Fed. Reg. 28,958 (Dep't of Commerce May 20, 2015) (final negative CVD determ.), and accompanying Issues & Decision Memorandum at 15). Plaintiffs offer nothing to demonstrate that Commerce's practice is unreasonable. See generally Jangho Comments.

Commerce likewise rejected Jangho's argument that "the provision of glass for LTAR subsidies are, 'by their very nature,' tied to glass at the point of bestowal." Remand Results at 21. As Commerce explained, "to the extent Jangho is arguing that the subsidy is tied to non-subject merchandise based simply on the input for which the subsidy is provided (i.e., glass), Jangho misunderstands Commerce's regulations and practice regarding the tying of subsidies. Commerce makes determinations regarding the tying of subsidies based on record evidence showing the express intent for the use of the subsidy in a specified subset of a company's production, not based on what Jangho refers to as the 'very nature' of the subsidy." See id. at 21 (internal citations omitted). Commerce found that "there is no information on the record, such as an executed contract or an agreement with express language, establishing that Jangho's purchases of glass for LTAR were designated for a certain subset of its production when it purchased the glass." Id. Accordingly, the court sustains as reasonable both Commerce's finding that the glass subsidies at issue were not "tied" to non-subject merchandise, as well as

Consol. Court No. 16-00009                                                                  Page 18

Commerce's determination to continue to account for glass subsidies in the net subsidy rate.

## B. Aluminum Extrusions Inputs

Plaintiffs' initially challenged Commerce's determination to countervail subsidies to aluminum extrusion inputs to the subject merchandise.  This issue was also remanded to Commerce.  <u>See</u> <u>Taizhou I</u>, 44 CIT at ___, 475 F. Supp. 3d at 1311.  On remand, Commerce continued to find that the provision of aluminum extrusions inputs for LTAR constituted countervailable subsidies to the production of subject merchandise.  <u>See</u> <u>Remand Results</u> at 12–15, 24.  Plaintiffs did not submit comments on the <u>Remand Results</u> with respect to this issue.  Since Plaintiffs no longer challenge this issue, the court sustains Commerce's finding.

## III. Conclusion

Given the circumstances presented, including the long history of the application of the aluminum extrusion orders to curtain walls and curtain wall units, the court concludes that Commerce's analysis and determination are reasonable.  Accordingly, the court sustains Commerce's <u>Remand Results</u>.  Judgment will enter accordingly.


                                                                    _____/s/ Leo M. Gordon_____
                                                                    Judge Leo M. Gordon


Dated: February 18, 2022
          New York, New York

Slip Op. 22-43

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., | |
| Plaintiff, | |
| and | |
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO GROUP CO., LTD., BEIJING JIANGHEYUAN HOLDING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO CURTAIN WALL HONG KONG LTD., SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., | Before: Leo M. Gordon, Judge |
| Consolidated Plaintiffs, | Consol. Court No. 16-00009 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | |
| Defendant-Intervenor. | |

**OPINION**

[Commerce's <u>Final Results</u> sustained.]

Dated: May 10, 2022

<u>Douglas J. Heffner</u> and <u>Richard P. Ferrin</u>, Drinker Biddle & Reath LLP of Washington, DC, for Plaintiff Taizhou United Imp. & Exp. Co. Ltd.

Consol. Court No. 16-00009                                              Page 2

 J. Kevin Horgan, Alexandra H. Salzman, Gregory S. Menegaz, and John Joseph Kenkel, deKieffer & Horgan, PLLC of Washington, DC, for Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., Jangho Curtain Wall Hong Kong Ltd. and Shanghai Jangho Curtain Wall System Engineering Co., Ltd.[1]

 Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades Jr., Assistant Director. Of counsel on the brief was Kirrin Hough, Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

 Alan H. Price, Robert E. DeFrancesco, III, and Elizabeth S. Lee, Wiley Rein LLP of Washington, DC, for Defendant-Intervenors Aluminum Extrusions Fair Trade Committee.

 Gordon, Judge: This action involves the final results of the 2013 administrative review conducted by the U.S. Department of Commerce ("Commerce") of the countervailing duty ("CVD") order on aluminum extrusions from the People's Republic of China ("PRC"). See Aluminum Extrusions from the People's Republic of China, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) (final results admin. rev.) ("Final Results"); see also accompanying Issues and Decision Memorandum, C-570-968 (Dep't of Commerce Dec. 7, 2015), available at https://enforcement.trade.gov/frn/summary/prc/2015-31425-1.pdf ("Decision

---

[1] In July 2020, approximately three months after the conclusion of briefing the USCIT Rule 56.2 motion for judgment on the agency record, Jangho replaced their former counsel at Sandler, Travis & Rosenberg, PA with their current counsel. See ECF No. 96 (Form 12 Substitution of Attorney filed by J. Kevin Horgan to appear in place of Kristen S. Smith).

Consol. Court No. 16-00009                                                            Page 3

Memorandum"); <u>Aluminum Extrusions from the People's Republic of China</u>, 76 Fed. Reg.

30,653 (Dep't of Commerce May 26, 2011) ("<u>CVD Order</u>").

 The court presumes familiarity with the history of this action.  <u>See</u> <u>Taizhou United</u>

<u>Imp. & Exp. Co. v. United States</u>, 46 CIT ___, 2022 WL 500665 (Feb. 18, 2022)

("<u>Taizhou II</u>"); <u>Taizhou United Imp. & Exp. Co. v. United States</u>, 44 CIT ___, 475 F. Supp.

3d 1305 (2020) ("<u>Taizhou I</u>"); <u>see also</u> <u>Shenyang Yuanda Aluminum Eng'g Co. v. United</u>

<u>States</u>, 41 CIT ___, 279 F. Supp. 3d 1209 (2017), <u>aff'd</u>, 918 F.3d 1355 (Fed. Cir. 2019)

(affirming Commerce's determination that curtain wall units imported under contract for

entire curtain wall are subject to <u>CVD Order</u>); <u>Shenyang Yuanda Aluminum Industry Eng'g</u>

<u>Co. v. United States</u>, 38 CIT ___, 961 F. Supp. 2d 1291 (2014), <u>aff'd</u>, 776 F.3d 1351,

1358 (Fed. Cir. 2015) (affirming Commerce's determination that parts of curtain wall units

are subject to the <u>CVD Order</u>); <u>Antidumping Duty and Countervailing Duty Orders on</u>

<u>Aluminum Extrusions from the People's Republic of China</u> (Dep't of Commerce Mar. 27,

2014) (final scope ruling on curtain wall units produced and imported as part of contract

to supply curtain wall), <u>available at</u> https://enforcement.trade.gov/download/prc-

ae/scope/38-curtain-wall-units-7apr14.pdf.

 In <u>Taizhou I</u>, the court sustained the <u>Final Results</u> as to almost all the issues raised

by Plaintiffs; however, the court remanded Commerce's determinations to countervail

subsidized purchases of glass and aluminum extrusions for further explanation and

reconsideration.  <u>Id.</u>  "Because the court remand[ed] Commerce's determination that it

may countervail glass and aluminum extrusions as inputs to the subject merchandise ….

Case 22-2000  Document 15  Page 78  Filed 10/03/2022  of 20

Consol. Court No. 16-00009                                                                 Page 4

the court d[id] not reach Plaintiffs' alternative arguments as to whether Commerce reasonably found that the statutory requirements of § 1677(5) were met with respect to Plaintiffs' aluminum extrusion and glass purchases." See Taizhou I, 44 CIT at ___, 475 F. Supp. 3d at 1311.  On remand, Commerce clarified and further explained why its determinations to countervail subsidized purchases of glass and aluminum extrusions were reasonable and in accordance with law, and the court sustained Commerce's remand results.  See Taizhou II, 46 CIT ___, 2022 WL 500665.

Accordingly, what remains before the court[2] are Plaintiffs' challenges to Commerce's application of the statutory requirements in finding that there were countervailable subsidies on glass and aluminum extrusions in the Final Results. Specifically, Plaintiffs challenge Commerce's finding that the suppliers of the glass and aluminum extrusions at issue constitute governmental "authorities" under 19 U.S.C. § 1677(5)(B),[3] as well as Commerce's findings that the provision of glass and aluminum extrusions for less than adequate remuneration ("LTAR") constituted "specific" subsidies as defined under 19 U.S.C. § 1677(5A)(D)(iii).  See Consolidated Pls.' Mem. in Supp. of its Mot. for J. on the Agency R. at 28–38, ECF No. 82-1 ("Jangho Br."); see also Def.'s

_____

[2] Upon consideration of Plaintiffs' motion for rehearing, see ECF No. 122, the court vacated a judgment it entered after Taizhou II to allow it to consider Plaintiffs' remaining arguments.  See Order Vacating Judgment, ECF No. 129.

[3] As Commerce explained, "when a respondent purchases an input from a trading company or non-producing supplier, [Commerce will find that] a subsidy is conferred if the producer of the input is an 'authority' within the meaning of [§ 1677(5)(B)] and that the price paid by the respondent for the input was for LTAR."  See Decision Memorandum at 28, 34.

Resp. in Opp'n to Pl.'s Mot. for J. on the Agency R. at 25–35, ECF No. 88 ("Def.'s Resp.");

Def.-Intervenors' Resp. in Opp'n to Mots. for J. on the Agency R., ECF No. 89;

Consolidated Pls.' Reply Br., ECF No. 93 ("Jangho Reply").[4]  The court has jurisdiction

pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C.

§ 1516a(a)(2)(B)(iii)[5], and 28 U.S.C. § 1581(c) (2018).  For the reasons set forth below,

the court denies Plaintiffs' motions, sustains the <u>Final Results</u> as to these remaining

issues, and will enter judgment accordingly.

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless

they are "unsupported by substantial evidence on the record, or otherwise not in

accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically, when reviewing

agency determinations, findings or conclusions for substantial evidence, the court

assesses whether the agency action is reasonable given the record as a whole.  <u>Nippon</u>

<u>Steel Corp. v. United States</u>, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).  Substantial

evidence has been described as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  <u>DuPont Teijin Films USA v. United States</u>,

407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S.

---

[4] Plaintiff Taizhou United Imp. & Exp. Co. Ltd. ("Taizhou") joins and incorporates by reference the arguments raised and briefed by Consolidated Plaintiffs Guangzhou Jangho Curtain Wall System Engineering Co., Ltd., Jangho Group Co., Ltd., Beijing Jiangheyuan Holding Co., Ltd., Beijing Jangho Curtain Wall System Engineering Co., Ltd., and Shanghai Jangho Curtain Wall System Engineering Co., Ltd. (collectively, "Jangho").

[5] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

197, 229 (1938)).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review.  3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2022).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2021).

## II. Discussion

### A. Authorities

In its Post-Preliminary Analysis, Commerce determined "that the [Government of China ("GOC")] failed to cooperate by not acting to the best of its ability, and had withheld certain information with regard to all producers of primary aluminum, aluminum extrusions, and glass, and applied [facts available with an adverse inference ("AFA")], finding all producers to be 'authorities' within the meaning of [19 U.S.C. § 1677(5)(B)]."  See Decision Memorandum at 110.  In reaching its Final Results, Commerce continued to find that the application of AFA was warranted, and accordingly determined that the suppliers of aluminum extrusions and glass to Plaintiffs were "authorities" under

§ 1677(5)(B).  Id.  Plaintiffs challenge Commerce's application of AFA and its resulting

determination as unreasonable.  See Jangho Br. at 29; Jangho Reply at 11–14.

Specifically, Plaintiffs maintain that "the administrative record demonstrates that

both Jangho and the GOC fully cooperated with Commerce and responded to all requests

for information to the best of their ability, providing thousands of pages of information and

documentation."   Jangho Br. at 29.   Plaintiffs acknowledge that certain requested

information was not provided, but contend that "[w]here information was missing, the GOC

informed Commerce that it did not have the information or was not able to obtain it."  Id.

Plaintiffs also argue that it is "unreasonable to apply punitive AFA facts in this proceeding

to Jangho for information that the GOC did not possess or was unable to obtain."  Id.[6]

Commerce explained that to facilitate its analysis of whether producers of glass

and aluminum extrusions sold to respondents during the POR were "authorities" within

the meaning of § 1677(5)(B), it asked "the GOC to provide information regarding the

specific companies that produced [aluminum extrusions and glass] which the Jangho

Companies purchased during the POR."  See Decision Memorandum at 28, 34.  In both

the New Subsidy Allegation ("NSA") questionnaire and a supplemental questionnaire,

Commerce asked the GOC specific questions regarding the ownership and control of the

primary producers of aluminum extrusions and glass for Jangho during the period

---

[6] The court observes that these comments from Plaintiffs constitute the entirety of
Plaintiffs' argument in their USCIT Rule 56.2 motion challenging the reasonableness of
Commerce's finding that the suppliers of glass and aluminum extrusions were
"authorities" under § 1677(5)(B).

of review ("POR").  <u>See</u> <u>id.</u>  Commerce also asked the GOC to respond to the Input

Producers Appendix for each producer of the input purchased by respondent companies.

<u>See</u> <u>id.</u> at 28, 35.

      Contrary to Plaintiffs' representation that "both Jangho and the GOC fully

cooperated with Commerce and responded to all requests for information to the best of

their ability," <u>see</u> Jangho Br. at 29, Commerce found that the GOC only provided partial

and incomplete information in response to these requests.  <u>See</u> <u>Decision Memorandum</u>

at 32, 38 ("[W]ith respect to the majority of the producers-suppliers identified by the

Jangho Companies, the GOC failed to provide the relevant Input Producer Appendix, and

further failed to request an extension for additional time to respond.  With respect to the

two producers-suppliers which the GOC identified as non-majority government-owned,

the GOC did not provide complete responses to our numerous requests for information,

including requests for information pertaining to ownership or control by CCP officials.").

The GOC maintained that it could not obtain the requested information from its local

offices responsible for collecting such information, and it was allegedly awaiting that

information, Commerce noted that the GOC never submitted any extension requests to

provide the requested information at a later time.  <u>See</u> <u>id.</u> at 32, 36.  With respect to the

two producers-suppliers of glass and aluminum extrusions for which the GOC did provide

some information, Commerce found that the GOC "did not provide key information

(<u>e.g.</u>, business license(s), business group registration, tax registration certificate, and

annual reports) for the Department to perform an analysis to trace ownership of the

enterprises in question back to the ultimate individual owners." Id. at 31–32, 37–38. Commerce further determined that this missing information was necessary for its analysis under § 1677(5)(B) as to whether the producers-suppliers of Plaintiffs' glass and aluminum extrusions were "authorities." Id. ("The information we requested regarding the ultimate owners of the producers of the primary input(s) and the role of government/CCP officials and CCP committees in the management and operation of the input producers, which sold inputs to the respondents, is necessary to our determination of whether the producers are 'authorities.'").

As a result, Commerce concluded that, because this necessary information was not on the record, it "must rely on 'facts otherwise available' in reaching a determination in this respect." Id. at 32, 38. Commerce also found that an adverse inference was warranted in the application of facts available because "the GOC failed to cooperate by not acting to the best of its ability to comply with requests for information regarding the producers of [glass and aluminum extrusions] from which the Jangho Companies purchased during the POR because the GOC did not provide the requested information." Id. Ultimately, as AFA, Commerce determined that "all of the producers that produced the [glass and aluminum extrusions] purchased by the Jangho Companies during the POR are 'authorities' within the meaning of [§ 1677(5)(B)]." Id.

Commerce rejected the GOC's argument "that it does not play a role in any ordinary business operations, including those in which the state holds an ownership interest," noting that Commerce "provided the GOC an opportunity to provide requested

information to enable the Department's 'authorities' analysis under [§ 1677(5)(B)], which the GOC refused to do." <u>Id.</u> at 111.  Commerce explained that it had "previously concluded that producers in the PRC that are majority-owned by the government possess, exercise, or are vested with governmental authority." <u>Id.</u> Commerce elaborated that its "finding in this regard is based on the fact that record evidence indicates that the GOC exercises meaningful control over these entities and uses them to effectuate its goals of upholding the socialist market economy, allocating resources, and maintaining the predominant role of the state sector." <u>Id.</u>  In particular, Commerce noted that it "also disagree[d] with the GOC that it has cooperated to the best of its ability," highlighting that Commerce "provided the GOC multiple opportunities to provide the requested information, which, as discussed above, was relevant and necessary to the Department's 'authorities' analysis under [§ 1677(5)(B)]." <u>Id.</u> at 112.

Commerce further found that "[t]he limited information that was provided by the GOC was not sufficient, in light of the remaining missing information." <u>Id.</u>  Commerce observed that "by stating that the information is not relevant, the GOC has placed itself in the position of the Department; however, it is the prerogative of the Department, not the GOC to determine what information is relevant to our proceedings." <u>Id.</u>  Therefore, Commerce determined that with respect to the "authorities" analysis, "the request for such information was necessary and warranted, and the GOC's failure to provide such information rendered the application of AFA appropriate." <u>Id.</u>  Commerce also emphasized that "the GOC's attempted justification for failing to provide all of the

requested information on the basis that its own local offices failed to respond simply demonstrates an unwillingness to provide information in this review." Id. Commerce further noted that "claims about the number of producers and suppliers and the burden of responding fully with regard to all producers is an insufficient explanation, given that the GOC failed to provide any producer appendices responses on its first opportunity, and failed to provide a single complete producer appendix response, and provided only five incomplete producer appendix responses." Id.

Given Commerce's analysis and explanation, the court cannot agree that the record supports Plaintiffs' contention that "both Jangho and the GOC fully cooperated with Commerce and responded to all requests for information to the best of their ability." See Jangho Br. at 29. To the contrary, while Plaintiffs highlight the information that GOC did provide in response to Commerce's requests, Plaintiffs' argument ignores the significant gap in the record left by the GOC's failure to act to the best of its ability to provide all the information requested by Commerce. Accordingly, the court sustains as reasonable Commerce's finding that the application of AFA was warranted as well as Commerce's determination that all the producers that produced the glass and aluminum extrusions purchased by Plaintiffs during the POR are "authorities" within the meaning of § 1677(5)(B).

## B. Benefit & Specificity[7]

Before Commerce may countervail a subsidy, it must find that the subsidy at issue is specific in law or fact as provided under 19 U.S.C. § 1677(5A)(D).  The statute provides that a subsidy may be "specific as a matter of fact" if "[t]he actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number."  <u>See</u> 19 U.S.C. § 1677(5A)(D)(iii)(I).   Here, Commerce, relying on facts available with an adverse inference, found that the aluminum extrusions for LTAR program was specific, noting that "the GOC did not provide a list of industries which purchase these inputs or provide the quantity and value purchased by each industry, withheld the information, and failed to explain why it had withheld the information."  <u>See</u> <u>Decision Memorandum</u> at 116. "With respect to glass for LTAR, [Commerce] relied on the information available to find the program specific under [§ 1677(5A)(D)(iii)(I)] because the GOC did not provide a list of industries which purchase these inputs or provide the quantity and value purchased by

---

[7] While Plaintiffs maintain that "The Administrative Record Does not Support a Finding of Benefit or Specificity," it appears that Plaintiffs' argument focuses solely on Commerce's specificity analysis under § 1677(5A)(D).  <u>See</u> Jangho Br. at 29.  Given that Plaintiffs develop no argument challenging Commerce's "Benefit" analysis under § 1677(5)(E), the court concludes that any challenge by Plaintiffs to Commerce's finding of a "Benefit" is waived.  <u>See</u> <u>Home Prods. Int'l, Inc. v. United States</u>, 36 CIT 33, 37, 810 F. Supp. 2d 1373, 1378–79 (2012); <u>MTZ Polyfilms, Ltd. v. United States</u>, 33 CIT 1575, 1578, 659 F. Supp. 2d 1303, 1308–09 (2009); <u>Fujian Lianfu Forestry Co. v. United States</u>, 33 CIT 1056, 1078, 638 F. Supp. 2d 1325, 1350 (2009); <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").  Accordingly, this section of the opinion solely addresses Plaintiffs' challenge to Commerce's findings of specificity under § 1677(5A)(D).

each industry.  Therefore, [Commerce] based [its] analysis on the industries identified

by the GOC and Petitioner, finding that the industries identified were limited and the glass

for LTAR program specific."  Id.

Plaintiffs challenge the reasonableness of Commerce's determinations under

§ 1677(5A)(D)(iii)(I) that the recipients of the aluminum extrusions and glass for LTAR

were "limited in number."  See Jangho Br. at 29–37 (maintaining that "the administrative

record in this proceeding demonstrates that no benefit was provided to a specific industry

or group of industries, and that both glass and aluminum extrusions are widely consumed

in China," and listing a wide variety of products produced in China containing aluminum

extrusions and glass); see also Jangho Reply at 14–16[8].

With respect to glass, Plaintiffs contend that the GOC's NSA Questionnaire

response, along with the language of the CVD Order, "demonstrate that glass serves

various applications and industries," and that it is unreasonable for Commerce to find that

the provision of glass for LTAR was "limited" where the record shows that "glass is widely

---

[8] In their reply, Plaintiffs state that "the record evidence in this administrative review shows
that the primary aluminum, aluminum extrusions and glass at LTAR are not specific under
19 U.S.C. § 1677(5A)(D)(iii)(I) as these inputs are used too broadly."  See Jangho Reply
at 16 (emphasis added).  However, Plaintiffs' motion for judgment on the agency record
focused on Commerce's determinations as to aluminum extrusions and glass, and made
no reference to Commerce's determination with respect to primary aluminum.  See
generally Jangho Br.  Accordingly, the court concludes that Plaintiffs have waived any
argument with respect to Commerce's determination as to primary aluminum.  See United
States v. Ford Motor Co., 463 F.3d 1267, 1276–77 (Fed. Cir. 2006) ("Arguments raised
for the first time in a reply brief are not properly before this court." (citing Novosteel SA v.
United States, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002) ("a party waives arguments
based on what [does not] appear[ ] in its brief")).

consumed in China."  See Jangho Br. at 30–31 (citing GOC's NSA Questionnaire Response at 10–11, PR[9] 276, CR 132 ("NSA Response")).  Plaintiffs make similar arguments regarding Commerce's determination as to the specificity of aluminum extrusions for LTAR.  See id. at 31–37 ("Similar to glass, and unlawfully, Commerce ignored record evidence demonstrating that [aluminum extrusions are] widely available in China.").

### 1. Glass

To determine which industries use glass, Commerce asked the GOC to provide a list of industries in China that purchased glass directly and to provide the amounts (volume and value) purchased by each of those industries.  See Decision Memorandum at 63.  The GOC responded that "[t]here are a vast number of uses for either tempered plate glass or laminated glass[,] [and] [t]he types of consumers that may purchase either tempered plate glass or laminated glass are highly varied within the economy…."  See id. (quoting NSA Response at 8).  The GOC further stated that "it is commonly known that tempered glass, and to some extent also laminated glass, are used in a variety of downstream sectors, including but not limited to doors and windows building, construction model forging, curtain wall, internal decoration, furniture and ancillaries, television, air-conditioning, refrigerator, toaster, oven, electronics, watch, mobile phone, musical

---

[9] "PR ___" refers to a document contained in the public administrative record, which is found in ECF No. 29-2 unless otherwise noted.  "CR ___" refers to a document contained in the confidential administrative record, which is found in ECF No. 29-3 unless otherwise noted.

players, cars and land transportation vehicles, home instrument, among others." Id. (quoting NSA Response at 10–11). However, Commerce observed that "the GOC provided none of the information requested concerning amounts purchased by individual industries, stating that 'to the best of the GOC's knowledge, neither tempered plate glass nor laminated glass producers compile their sales volume and value by the industry in which the mandatory respondent companies operate, as well as the totals purchased by every other industry.'" Id.

Commerce noted that the petitioner's new subsidy allegation "provided information demonstrating that users of tempered and laminate glass are limited to a number of enterprises and industries (e.g., construction and automobile)." Id. Commerce found that while the GOC identified several "uses" for glass, it had not "not classified these 'uses' into industries or otherwise identified the industries which cover these various uses." Id. Commerce further found that an analysis of the types of end uses described by the GOC "would imply the existence of at least four industries." Id. Given the GOC's failure to provide data supporting its claim that "there are vast 'uses' of glass" and its contention that it is "common knowledge that glass is 'used in a variety of downstream sectors[,]'" Commerce found that the "GOC's claims lack evidentiary value, as they are based on the GOC's opinions or on what the GOC claims is common knowledge, and not on any express or specific evidence." Id. Accordingly, Commerce, "taking into consideration the information provided by Petitioner and the GOC," determined that the "recipients of glass

are limited in number to at least two and possibly four industries, and that the provision of glass is therefore <u>de facto</u> specific within the meaning of [§ 1677(5A)(D)(iii)(I)]." <u>Id.</u>

Plaintiffs' arguments here echo those raised by the GOC in the underlying proceeding. While Plaintiffs highlight the wide variety of "uses" of glass, Plaintiffs do not engage with Commerce's analysis of the record nor its resulting finding that "recipients of glass are limited in number to at least two and possibly four industries." <u>See</u> <u>Decision Memorandum</u> at 63; <u>cf.</u> Jangho Br. at 30–31. Plaintiffs maintain that Commerce's finding of specificity is unreasonable in light of Commerce's prior determination in <u>Chlorinated Isocyanurates from the People's Republic of China</u>, 79 Fed. Reg. 56,560 (Dep't of Commerce Sept. 22, 2014) ("<u>Chlorinated Isocyanurates</u>"), in which Commerce found an alleged urea LTAR program not to be specific because there were nine separate industries that consumed urea. <u>See</u> Jangho Br. at 37; <u>see also</u> <u>Decision Memorandum</u> at 118. Plaintiffs, however, again fail to engage with Commerce's explanation for why <u>Chlorinated Isocyanurates</u> was distinguishable and inapplicable here. Commerce explained that the "GOC has provided no verifiable[] evidence, and indeed no evidence, of any industries consuming glass." <u>Decision Memorandum</u> at 118. Commerce further noted that even in the hypothetical circumstance where there was "verifiable information on the record indicating that the GOC's list of purported users of glass was accurate, that list would not reflect the diversity of users which were found to consume urea in <u>Chlorinated Isocyanurates from the PRC</u>." <u>Id.</u> Commerce also highlighted that "the GOC's assertion and argument [did not] attempt [to] address the issue of whether the

construction industry is a predominant or disproportionate user of glass." Id.  Having

failed to engage with the merits of the analysis of Commerce's challenged determination,

Plaintiffs are unable to demonstrate that Commerce acted unreasonably in finding the

provision of glass for LTAR to be specific under § 1677(5A)(D)(iii)(I).

### 2. Aluminum Extrusions

As for aluminum extrusions, Commerce similarly asked the GOC to provide a list

of industries that purchased aluminum extrusions directly and to provide the amounts

(volume and value) purchased by each of the industries.  See Decision Memorandum

at 32.  In response, the GOC again failed to provide the requested information; instead,

the GOC responded that "[t]here are a vast number of uses for aluminum extrusions," and

that the "type of consumers that may purchase aluminum extrusions is highly varied within

the economy."  See id. (quoting NSA Response at 4).  The GOC further stated that "[a]s

the Department is aware, aluminum extrusions are used in a variety of downstream

sectors, as evidenced by the comprehensive coverage and large number of HTS codes

and the wide variety of scope rulings with respect to the subject merchandise of this

proceeding."  Id. at 32–33.

Commerce observed that information placed on the record by petitioner regarding

aluminum extrusions "identified three consuming industries[:] transportation, machinery,

and equipment."  Id. at 117.  Commerce requested additional detail on this issue from the

GOC in its Third Supplemental Questionnaire, noting that "the GOC claimed in [two other

proceedings covering solar cells] that there were six industries that consumed aluminum

extrusions in 2012: construction industry, transportation industry, mechanical and electrical equipment industry, consumer durable goods industry, electricity, and other industries." Id. at 33, 117. While the "GOC endorsed that information, it claimed it was unable to provide updated information for the POR 'in this timeframe of this NSA investigation,' without explaining why it was not able to do so in the allotted timeframe or what efforts it made to collect the information." Id. at 33 (citing GOC Third Supplemental Questionnaire Response at 66 and 67, PR 317). Commerce further noted that "[u]ltimately, the GOC provided none of the information requested concerning amounts of aluminum extrusions purchased by individual industries." Id.

Commerce found that it must rely on "facts available" as "necessary information is not available on the record" due to the GOC's failure to cooperate and refusal to act to the best of its ability to comply with Commerce's request for information. Id. Consequently, Commerce found that an adverse inference was warranted, and in applying AFA, Commerce found that the "GOC's provision of aluminum extrusions is specific within the meaning of [§ 1677(5A)(D)(iii)(I)]." Id. Commerce explained that it "found the program to be specific based on AFA because the GOC declined to provide a list of industries on the record of this review, despite evidence that they had done so in the past. Further the GOC's contention that it lacked sufficient time to do so, within the deadline of our supplemental questionnaire, is insufficient. Our AFA determination merely noted that evidence available on the record indicates no more than the existence of three industries according to Petitioner and the GOC's endorsement of six U.S. industries,

including the construction industry, that supported the determination in <u>Crystalline Silicon Photovoltaic Cells</u>."  <u>Id.</u> at 117.

Plaintiffs maintain that Commerce's application of AFA here effectively "ignore[d] evidence on the record that demonstrates that aluminum extrusions are widely available." Jangho Br. at 31.  Plaintiffs reiterate the wide variety of products in which aluminum extrusions may be found, arguing that Commerce's scope rulings as to these products "demonstrate that extrusions are used in a virtually innumerable variety of industries."  <u>Id.</u> at 32–37.  Plaintiffs' contentions lack merit.  As Commerce explained, "the various scope rulings or the scope of the <u>Orders</u> do not indicate a precise number or list of consuming industries different from the sets of three or six indicated on the record."  <u>See</u> <u>Decision Memorandum</u> at 117.  Commerce noted that while the GOC had "pointed to the large number of products which are within the scope of the order, the GOC has not suggested these products fall under additional industries not considered."  <u>Id.</u>  Plaintiffs' recitation of the various scope rulings and products containing aluminum extrusions does not engage with Commerce's determination that it "cannot base its analysis on information which the GOC failed to place on the record."  <u>Id.</u>  In reaching its determination, Commerce emphasized that "the GOC has not provided the quantity and value of aluminum extrusions consumed by the three to six industries identified on the record, or any other industries."  <u>Id.</u>

Plaintiffs again suggest that Commerce's finding of specificity as to the provision of aluminum extrusions in this proceeding is inconsistent with Commerce's negative

finding in <u>Chlorinated Isocyanurates</u>.   As explained above, Plaintiffs' argument fails to address the distinctions between this proceeding and Commerce's findings in <u>Chlorinated Isocyanurates</u> regarding the wide variety of industries consuming the subsidized input.   <u>See</u> <u>Decision Memorandum</u> at 118 (distinguishing record in <u>Chlorinated Isocyanurates</u> with GOC's failure to provide verifiable evidence on record). Plaintiffs' reliance on <u>Chlorinated Isocyanurates</u> is also misplaced because Commerce relied on AFA to reach its specificity finding as to aluminum extrusions for LTAR here, whereas Commerce did not have to resort to AFA in <u>Chlorinated Isocyanurates</u> in finding no specificity regarding urea for LTAR.  <u>See</u> <u>Decision Memorandum</u> at 118.

Overall, the court cannot agree with Plaintiffs that Commerce acted unreasonably in determining that the GOC failed to act to the best of its ability and withheld necessary information on the record.  Accordingly, the court sustains Commerce's decision to apply AFA, and its subsequent determination that the industries consuming aluminum extrusions are limited and that the aluminum extrusions for LTAR program is "specific" under § 1677(5A)(D)(iii)(I).

### III. Conclusion

For the foregoing reasons, the court denies Plaintiffs' remaining challenges to the <u>Final Results</u>.  Judgment will be entered accordingly.


                                         /s/ Leo M. Gordon
                                      Judge Leo M. Gordon

Dated: May 10, 2022
    New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| TAIZHOU UNITED IMP. & EXP. CO. LTD., | |
| Plaintiff, | |
| and | |
| GUANGZHOU JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO GROUP CO., LTD., BEIJING JIANGHEYUAN HOLDING CO., LTD., BEIJING JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., JANGHO CURTAIN WALL HONG KONG LTD., SHANGHAI JANGHO CURTAIN WALL SYSTEM ENGINEERING CO., LTD., | Before: Leo M. Gordon, Judge |
| Consolidated Plaintiffs, | |
| v. | Consol. Court No. 16-00009 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, | |
| Defendant-Intervenor. | |

**JUDGMENT**

This action having been submitted for decision, and the court, after due deliberation, having rendered opinions; now in conformity with those opinions, it is hereby

**ORDERED** that final results in the 2013 administrative review of the countervailing duty order covering <u>Aluminum Extrusions from the People's Republic of China</u>, 80 Fed. Reg. 77,325 (Dep't of Commerce Dec. 14, 2015) (final results admin. review), and the accompanying Issues and Decision Memorandum, C-570-968 (Dep't of Commerce

Consol. Court No. 16-00009                                                     Page 2

Dec. 7, 2015), available at https://enforcement.trade.gov/frn/summary/prc/2015-31425-1.pdf (last visited this date), are sustained, except for the matters covered by the Final Results of Redetermination ("Remand Results"), ECF No. 103, filed pursuant to Taizhou United Imp. & Exp. Co. v. United States, 44 CIT ___, 475 F. Supp. 3d 1305 (2020); it is further

      **ORDERED** that the Remand Results are sustained; and it is further

      **ORDERED** that the subject entries enjoined in this consolidated action, see ECF No. 15 (order granting Taizhou's consent motion for amended injunctive relief), must be liquidated in accordance with the final court decision, as provided for in Section 516A(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(e) (2018).


                                      /s/ Leo M. Gordon
                                 Judge Leo M. Gordon


Dated: May 10, 2022
      New York, New York

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2022-2000

**Short Case Caption:**  Taizhou United Imp. & Exp. Co. Ltd. v. US

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes  5,928  words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date:  10/03/2022               Signature:   /s/ J. Kevin Horgan

                                Name:        J. Kevin Horgan

Save for Filing